**John R. BUTZ, Trustee in Bankruptcy, 806 Arcue Building, Springfield, Ohio 45502, Plaintiff,**

**v.**

**BANCOHIO NATIONAL BANK, 4 West Main Street, Springfield, Ohio 45502, Defendant.**

**In the Matter of William Anderson MANNS, Debtor.**

**Bankruptcy No. 3–82–03141. Adv. No. 3–83–0153.**

United States Bankruptcy Court, S.D. Ohio, W.D.

July 22, 1983.

James R. Warren, Springfield, Ohio, for debtor.

Joseph N. Monnin, Springfield, Ohio, for defendant.

John R. Butz, trustee/plaintiff, Springfield, Ohio.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

## PRELIMINARY PROCEDURE

This matter is before the Court upon Complaint filed on 28 February 1983 by the Chapter 7 Trustee. The Complaint seeks to avoid alleged preferential transfers to Defendant, and to obtain money judgment in the amount of any transfers avoided. The Court considered the matter at a pretrial conference held 25 March 1983, and heard the matter on 6 May 1983. The parties subsequently submitted legal briefs. The following decision is based upon the evidence adduced at the hearing and the record, inclusive of the parties' briefs.

## FINDINGS OF FACT

The pertinent facts are not in dispute. On 17 July 1970, Debtor and Defendant BancOhio National Bank entered into a "BancPlan Reserve Account Agreement," whereby Defendant agreed to extend a "line of Credit" to Debtor by agreeing to honor overdrafts on Debtor's checking account and then "charging" the overdrafts to a special mastercard "ready reserve" account. Aside from the checking overdraft charges, Debtor's "regular" master-

card account also had $1,273.66 of "regular" mastercard charges which Debtor paid within the period ninety days prior to Debtor's Petition filing, but which Defendant does not contest may be avoided herein.

It is undisputed that Debtor's payments on the checking overdrafts within ninety days of the Petition filing satisfy the five elements defining preferential transfers in 11 U.S.C. § 547(b). The only issue before the Court is whether the instant transfers may be excepted under 11 U.S.C. § 547(c)(2) or (4) from the Trustee's power to avoid transfers deemed preferential pursuant to 11 U.S.C. § 547(b). 11 U.S.C. § 547(c)(2) and (4) provide, respectively, as follows:

> (c) The trustee may not avoid under this section a transfer—
>
> .    .    .    .    .
>
> (2) to the extent that such transfer was—
> (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
> (B) made not later than 45 days after such debt was incurred:
> (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
> (D) made according to ordinary business terms; [or]
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

> (A) not secured by an otherwise unavoidable security interest; and
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor....

Debtor filed his Petition under Chapter 7 on 8 November 1982. The ninety day period preceding the date of Debtor's Petition filing thus commences on 10 August 1982.

Debtor apparently routinely used the mastercard "ready reserve" account by writing a large number of checks for which there were insufficient funds in his checking account, and then paying the overdrafts when billed on his special mastercard account. The Court notes that a large number of these checks were made payable to creditors who would otherwise have been general creditors herein.

Throughout the pertinent time period, Debtor's "ready reserve" line of credit was $1,500.00. The parties' "BancPlan Reserve Account Agreement" required a minimum monthly payment of one-twentieth (1/20) of the credit line; thus Debtor was required by the Agreement to pay monthly a minimum of $75.00 on the account until paid in full.

During the ninety day period preceding Debtor's Petition filing, however, Debtor paid $3,500.00 to Defendant on the Ready Reserve Account. The Trustee seeks to avoid this amount as preferential. During the ninety day period prior to Debtor's Petition filing, the activity on Debtor's ready reserve account was as follows:

| DATE | CHARGES * | CREDITS ** | READY RESERVE IN USE |
|---|---|---|---|
| 8–8–82 | | | (251.01) |
| 8–10–82 | 15.50 | | (266.51) |
| 8–12–82 | [4.00 service fee] | | (270.51) |
| 8–12–82 | [2.64 finance charge] | | (273.15) |
| 8–16–82 | 50.00 | | (323.15) |
| 8–23–82 | 50.00 | | (373.15) |
| 8–24–82 | | 500.00 | + 126.85 |
| 8–26–82 | 19.00 | | + 107.85 |
| 9–8–82 | 460.90 | | (353.05) |
| 9–15–82 | [4.00 service fee; 3.06 finance charge] | | (360.11) |

| DATE | CHARGES * | CREDITS ** | READY RESERVE IN USE |
|---|---|---|---|
| 9–20–82 | 500.00 | | (860.11) |
| 9–22–82 | 204.75 | | (1,064.86) |
| 9–23–82 | 116.00 | | (1,274.59) |
| 9–27–82 | 112.53 | | (1,387.12) |
| 10–4–82 | 25.00 | | (1,412.12) |
| 10–18–82 | [4.00 service fee<br>1.50 reserve fee<br>21.19 finance<br>charge] | | (1,438.81) |
| 10–18–82 | | 500.00 | (938.81) |
| 10–20–82 | 300.00 | | (1,238.81) |
| 10–26–82 | | 1,000.00 | (238.81) |
| 10–27–82 | 931.80 | | (1,170.61) |
| 11–3–82 | 11.37 | | (1,181.98) |
| 11–4–82 | | 1,500.00 | +318.12 |
| 11–8–82 | 99.00 | | +219.02 |

* "Charges" are presumably incurred on the date that the overdraft is honored by the Bank. Although the checks may have been previously issued and even previously presented, the "debt" in issue for purposes of measuring the date "incurred" is the "charge" itself made to the ready reserve account upon the honoring of the check, without reference to the date the check was indorsed, issued or presented. In this regard, *see generally, Sandoz v. Fred Wilson Drilling Company (Matter of Emerald Oil Co.)*, 695 F.2d 833, 836 (*dicta* in n. 4) (5th Cir. 1983); *Keys v. Paducah & I. R. Co.*, 51 F.2d 611 (6th Cir. 1932); *Sarkis v. American State Bank of Rapid City (In re Sarkis)*, 17 B.R. 174 (B.C. S.D. Ohio 1982); *Matter of Duffy*, 3 B.R. 263, 6 B.C.D. 88 (B.C. S.D. N.Y. 1980). *See also* this Court's opinion in *Matter of Springfield Casket Co.*, 21 B.R. 223, 9 B.C.D. 473, 34 U.C.C.Rep. 305 (June 24, 1982). For general principle that the forty-five day period commences on the date the debt is incurred rather than billed, *also see, Iowa Preimum Service Co., Inc. v. First National Bank in St. Louis, Missouri (In re Iowa Premium Service Co., Inc.)*, 695 F.2d 1109 (8th Cir. 1982); *Barash v. First Galesburg National Bank*, 658 F.2d 504 (7th Cir. 1981); *Whitlock v. Max Goodman & Sons Realty, Inc. (In re Goodman Industries, Inc.)*, 21 B.R. 512, 521–522 (B.C. D. Massa. 1982), and citation therein; and *Belfance v. Standard Oil Company (In re Hersman)*, 20 B.R. 569, 9 B.C.D. 577 (B.C. N.D. Ohio 1982).

** The Court notes that it appears from the exhibits that all payments were credited upon cash payment. The Court notes, however, that, it the payments were made by drafts naming a third party as drawee (i.e. if Defendant, as payee, was merely a "depository" bank for the purposes of the instrument for payment), then the forty-five day period would be measured from the date the drawee (as agent) honored the instrument, rather than the date the Bank, as payee, received the instrument creating the agency. *Id.*

---

The Court also notes that Debtor made charges against the ready reserve account in August of 1982 prior to the ninety day period, as follows:

| 8–2–82 | $ 22.00 |
|---|---|
| 8–2–82 | $ 13.00 |
| 8–2–82 | $ 22.00 |
| 8–3–82 | $ 37.83 |
| 8–3–82 | $115.60 |
| 8–3–82 | $116.00 |
| 8–4–82 | $ 61.74 |
| 8–5–82 | $ 15.95 |
| 8–6–82 | $460.90 |

The Trustee argues that, although those creditors paid through the ready reserve account may have been paid for debts incurred in the ordinary course of Debtor's financial affairs, Debtor's payments directly to Defendant were not in the ordinary course of Debtor's financial affairs. The Trustee emphasizes that Debtor made payments on the ready reserve account "when he could" without any apparent "routine" or "usual" payment amount.

Defendant responds that the amount of charges and the amount of the payments relative to the required minimum payment are irrelevant to a finding of exception of 11 U.S.C. § 547(c)(2). Furthermore, Defendant also responds that Debtor's practice apparently has been to pay the ready reserve account approximately in full shortly

after any overdraft charges were billed. In addition, Defendant argues that the $99.00 charge accomplished on 8 November 1982 also justifies excepting in that amount any previous payment within the ninety days based upon the exception in 11 U.S.C. § 547(c)(4).

The details of the MasterCard receipts by the Defendant were not contested at the trial because the records could not be produced by the Bank.

## DECISION AND ORDER

The basic question before this Court is whether Debtor's payment of an aggregate of $3,500.00 on overdraft charges may be excepted under 11 U.S.C. § 547(c)(2) or (4) from 11 U.S.C. § 547(b).

It is the initial finding of the Court that all of the transactions involving Debtor's ready reserve account appear to have been in the ordinary course of Debtor's financial affairs. The Court specifically notes that the checks were made payable to the order of noninsider general creditors (specifically, e.g., the Gulf Oil Company and J.C. Penney Co.) or to the order of "cash." In addition, Debtor apparently routinely made payments on his ready reserve account which were a substantial portion of the balance owing, and the large amounts paid in the month immediately preceding Debtor's Petition filing appear to follow this "routine," even though the charges were substantially larger (probably because of the financial difficulties prompting the Petition filing).

Courts have uniformly held that payments on general credit card accounts may be excepted pursuant to 11 U.S.C. § 547(c)(2) if the payments are traceable to obligations incurred within forty-five days of the date of payment. *See,* for identical credit arrangement, *Pfau v. First National Bank, Pipestone, Minnesota (In re Schmidt),* 26 B.R. 89 (B.C.D.Minne.1982), (also holding that a "ready reserve" credit arrangement may constitute a contemporaneous exchange under 11 U.S.C. § 547(c)(1), though this Court specifically declines to so hold because the issue was not raised *instanter; See also, In Re Rustia,* 20 B.R. 131, 9 B.C.D. 6, 6 C.B.C.2d 917 (B.C.S.D.N.Y.1982), (con-cluding the credit card payments not excepted because unable to find that the payments were "earmarked" to any particular charges, and thus distinguishable on the instant facts); and *Belfance v. Standard Oil Company (In re Hersman), supra,* (finding, however, that payments were preferential because outside the forty-five day period). This Court perceives no basis to reason otherwise in the instant matter.

The initial determination to be made, therefore, is the extent Debtor's payments on the ready reserve account within ninety days of Debtor's Petition filing were for obligations incurred within forty-five days of the payments. In calculating this amount under the instant facts, the Court will measure the forty-five day period from the date the overdraft was honored by the bank to the date the charges were satisfied by cash payments. *See* footnotes *supra.*

It is the determination of the Court that $3,161.45 of the payments on the ready reserve account may be excepted under 11 U.S.C. § 547(c)(2), based upon the following findings.

The Court finds that the payment of $500.00 on 25 August 1983 may be deemed in satisfaction of the following overdraft charges within forty-five days of the payment:

| | |
|---|---|
| 8–2–82 | $ 22.00 |
| 8–2–82 | $ 13.00 |
| 8–2–82 | $ 22.00 |
| 8–3–82 | $ 37.83 |
| 8–3–82 | $115.60 |
| 8–3–82 | $116.00 |
| 8–3–83 | $ 61.74 |
| 8–5–82 | $ 15.95 |
| 8–6–82 | $460.90 |

The Court finds that the payment of $500.00 on 18 October 1982 may be deemed in satisfaction of the following overdraft charges within forty-five days of the payment:

| | |
|---|---|
| 9–8–82 | $460.00 |
| 9–20–82 | $ 40.00 (only apply $40.00 of $500.00 charge) |

The Court finds that the payment of $1,000.00 on 26 October 1982 may be deemed in satisfaction of the following

overdraft charges within forty-five days of the payment:

| | |
|---|---|
| 9–20–82 | $460.00 (apply remainder of $500.00 charge on used above) |
| 9–22–82 | $204.75 |
| 9–23–82 | $116.00 |
| 9–27–82 | $112.53 |
| 10–4–82 | $ 25.00 |
| 10–20–82 | $ 81.72 (apply only $81.72 out of $300.00 charge) |

The Court finds that the payment of $1,500.00 on 4 November 1982 may be deemed in satisfaction of $1,161.45 of the following overdraft charges within forty-five days of the payment:

| | |
|---|---|
| 10–20–82 | $218.28 (the remainder of $300.00 charge) |
| 10–27–82 | $931.80 |
| 11–3–82 | $ 11.37 |

Based upon these findings, it is the determination of the Court that $3,161.45 of Debtor's payments to Defendant on the ready reserve account, although preferential, may be excepted under 11 U.S.C. § 547(c)(2).

The Court also finds that the final prepetition charge of $99.00 constituted "new value" given to Debtor, and that the charge is unsecured and was not otherwise satisfied. 11 U.S.C. § 547(c)(4); *See generally, Waldschmidt v. Harry Ranier, et al. (In re Fulghum Construction Corporation)*, 706 F.2d 171, B.L.D. ¶ 69,201 (6th Cir., May 9, 1983). Based upon these additional findings, it is the further determination of the Court that the $99.00 payment to Defendant on the ready reserve account, although preferential, is excepted under 11 U.S.C. § 547(c)(4).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that of the $3,500.00 of payments in issue on the subject ready reserve account, $3,161.45 is EXCEPTED from the Trustee's 11 U.S.C. § 547(b) avoidance power pursuant to 11 U.S.C. § 547(c)(2); $99.00 is EXCEPTED pursuant to 11 U.S.C. § 547(c)(4); and the remainder of $239.55 is HEREBY DEEMED AVOIDED pursuant to 11 U.S.C. § 547(b).

IT IS FURTHER ORDERED that $1,273.66 of the payments on Debtor's subject "regular" mastercard account are HEREBY DEEMED AVOIDED.

IT IS FURTHER ORDERED that the Trustee is accordingly GRANTED MONEY JUDGMENT in the amount of $1,513.21.