**In re Howard Ray FERGUSON,
Individually and t/a Red Hill
Pork Farm, Debtor.**

**Robert A. CANFIELD, Trustee in
Bankruptcy for Howard Ray
Ferguson, Plaintiff,**

**v.**

**GREENSVILLE FEED MILL OF
EMPORIA, Defendant.**

**Bankruptcy No. 81–00301–R.
Adv. No. 82–0232–R.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

May 30, 1984.

Watson M. Marshall, Richmond, Va., for plaintiff.

H. Benjamin Vincent, Emporia, Va., for defendant.

MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court upon a complaint by Robert A. Canfield, trustee in bankruptcy, to avoid a preferential transfer to Greensville Feed Mill of Emporia. This Court held a hearing on the trustee's complaint on February 2, 1984. After both parties presented evidence and argu-

ment, this Court took the matter under advisement and the parties filed memoranda of law in support of their positions. After consideration of the evidence and argument, this Court renders the following opinion.

## STATEMENT OF FACTS

The facts do not seem to be seriously in dispute and the Court finds as follows:

On or about January 15, 1981 Howard Ray Ferguson, the debtor, gave to Greensville Feed Mill of Emporia (Greensville) a check for $12,499.32 in satisfaction of the debtor's entire outstanding indebtedness to Greensville. On February 23, 1981, the debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

The debtor had routinely purchased feed and other supplies from Greensville in connection with the operation of his pork farm. The debtor was billed on a monthly basis for feed and supplies purchased during each previous month. The debtor was expected to pay those monthly bills by the fifth day of the month following billing.

The amount of the payments made at monthly intervals by the debtor rarely coincided with the total purchases made in the prior billing period. The payments were usually in increments of $1,000.00 and the payments ranged generally between $1,000.00 and $16,000.00. It was not unusual for the debtor to make two payments in a single month. In fact, the evidence produced at trial demonstrates that in 1980 one payment was made in January, two payments in March, two payments in April, three payments in May, two payments in June, one payment in August, three payments in September, two payments in October, one payment in November, one pay-

ment in December, and the final payment, the payment in question, made in January, 1981.

For a large portion of 1980, the debtor carried a substantial balance of approximately $10,000.00 with Greensville. Until November rarely did the payments substantially reduce the indebtedness although early in 1980 (January 28, 1980) the debtor reduced his total outstanding debt to Greensville to $2,141.40. *See* Defendant's Exhibit 1. However, on November 18, 1980, the debtor made a $16,000.00 payment to Greensville reducing the outstanding obligation to less than $2,000.00. Approximately 90 days prior to bankruptcy, the debtor owed Greensville approximately $4,500.00. During the 90 days prior to bankruptcy the debtor incurred additional debt to Greensville increasing the total indebtedness to $11,620.67, then made a $5,000.00 payment to Greensville on December 24, 1980, incurred additional debt to Greensville, and finally paid off the entire balance of $12,499.32 on or about January 15, 1981 (See Appendix). The petition was then filed on February 23, 1981. The debtor testified that the reason for paying the entire outstanding debt was that he was terminating his pork farm business.

## CONCLUSIONS OF LAW

The trustee brings this complaint pursuant to 11 U.S.C. § 547 alleging that the last transfer represented by the $12,499.32 check from the debtor to Greensville is a preferential transfer in that it was made while the debtor was insolvent, within 90 days of the date of the filing of bankruptcy, for an antecedent debt, and the transfer enables Greensville to receive more than they would in liquidation.[1] Greensville

---

1. Section 547(b) provides:
   Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
   (1) to or for the benefit of a creditor;
   (2) for or an account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—

   (A) on or within 90 days before the date of the filing of the petition; or
   (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
   (i) was an insider; and
   (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

does not dispute that the transfer was made, that it was made on account of an antecedent debt, that it was made within 90 days prior to the filing of bankruptcy, or that it was made while the debtor was insolvent. Rather, Greensville attempts to fall within one of the various exceptions to § 547(b). Specifically, Greensville alleges that the requirements of 11 U.S.C. § 547(c) are satisfied in the instant matter and consequently the transfer is excepted from the general provisions of § 547. Thus, the sole issue remaining before the Court is whether that transaction fits within the provisions of § 547(c).

Section 547(c) provides that the trustee cannot avoid transfers otherwise preferential that were 1) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and creditor; 2) made not later than 45 days after the debt was incurred; 3) made in the ordinary course of business or financial affairs of the debtor and creditor; and 4) made according to ordinary business terms. *See* 11 U.S.C. § 547(c).[2] The Court is satisfied that the payment was of a debt incurred in the ordinary course of the debtor's and creditor's business affairs. The evidence demonstrates that Greensville regularly sold feed and supplies to the debtor and billed the debtor monthly for these expenditures. Thus, the debt owed to Greensville was incurred in the usual manner between the parties. In fact, evidence produced at trial demonstrates that the debtor purchased supplies and feed on account in the same manner for at least the twelve months preceding the filing of bankruptcy.

The second requirement that Greensville must satisfy is that the transfer was made not later than 45 days after the debt was incurred. To the extent that the payment was for any obligation incurred more than 45 days prior, the payment would be outside the exception of § 547(c). The transfer/payment was made on or about January 15, 1981, therefore, payment of obligations incurred prior to December 1, 1980 would not be protected by § 547(c). After a $16,000.00 payment by the debtor to the creditor on November 18, 1980, the debtor still owed Greensville $1,540.23. On November 28, 1980 the debtor incurred obligations of $2,848.65 and $70.00, thereby, making an outstanding balance of $4,558.88 due Greensville prior to December 1, 1980. If payments are applied to the oldest obligations first then the entire $4,558.88 was satisfied by the debtor's $5,000.00 payment to Greensville on December 20, 1980. (See Appendix).[3] Therefore, having satisfied any and all obligations incurred prior to December 1, 1980 by the payment on December 20, 1980, the debt that was satisfied by the $12,499.32 payment on January 15, 1981 was all incurred after December 1, 1980 and, therefore, within the 45 days prior to the challenged payment.[4] With

---

(5) that enables such creditor to receive more than such creditor would receive if—
  (A) the case were a case under chapter 7 of this title;
  (B) the transfer had not been made; and
  (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

**2.** Section 547(c)(2) provides:
  The trustee may not avoid under this section a transfer—

  .        .        .        .        .

  (2) to the extent that such transfer was—
  (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee:
  (B) made not later than 45 days after such debt was incurred;

  (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
  (D) made according to ordinary business terms; . . . .

**3.** The Court need not determine, because the matter is not before the Court, whether the $5,000.00 payment on December 24, 1980 (which was within the preference period) was all for debt incurred within 45 days of December 24, 1980.

**4.** Between December 1, 1980 and January 15, 1981 (the date of the final payment of $12,499.32) the debtor incurred obligations to Greensville in the amount of $12,940.44. Therefore, $441.12 represents the amount of debt incurred after December 1, 1980 which was satisfied by the $5,000.00 payment made on Decem-

this in mind, the Court can and does find that the transfer in question was not made later than 45 days after the debt was incurred.

The final remaining inquiries are whether the transfer was made in the ordinary course of the business or financial affairs of the debtor and creditor, and whether the transfer of the $12,499.32 was made according to ordinary business terms. The terms of payment in question here do not appear to be extraordinary. Rather, the debtor made a payment on the outstanding indebtedness. The only unusual features of this payment are that the size of the payment was rather large in comparison with most other payments made and that the payment completely retired all outstanding indebtedness between the debtor and Greensville. Thus, the ultimate resolution of this matter appears to turn on whether this large final payment on the debtor's account with Greensville was "made in the ordinary course of business or financial affairs" of the debtor and creditor.

The ordinary business affairs of the debtor and creditor in this matter were for the creditor, Greensville, to permit the debtor to purchase feed and supplies and pay for them at a later time, hopefully, by monthly billing. The actual practice appears to be that the debtor paid what he could against the outstanding indebtedness when he could make certain payments. The creditor accepted this course of conduct. A $12,499.32 payment is rather large when compared to the other monthly or bi-monthly payments, however, the two immediate previous payments were in the amount of $5,000.00 and $16,000.00. Therefore, although the payment in question was large it was not extraordinary for the debtor to make such a payment. The fact that the payment in question here completely satisfied the outstanding indebtedness to Greensville can be explained by the debtor's testimony that he was closing down his pork farm business. With these considerations in mind, this Court is satisfied that the transfer represented by the $12,499.32 check to Greensville was made in the ordinary course of business or financial affairs of the debtor and creditor.

Relevant case law supports the Court's determinations herein. In a closely analogous case the court implied that the mere fact that payments had been made erratically over the course of dealings between the parties was insufficient to take the transaction outside the exception of § 547(c)(2). *In re Butz (Butz v. Champaign Landmark, Inc.)*, 33 B.R. 926 (Bankr.S.D. Ohio 1983). There the trustee sought to avoid the payment of $5,000.00 made by the debtors to a creditor within 90 days of the filing of the bankruptcy petition. In *Butz* the debtors were farmers who maintained accounts with the creditor for feed, oil, and various farm supplies. The creditor in that matter, as in the instant matter, argued that the payments fell within the exception of § 547(c)(2). The court found that "the understanding between the parties [was] that payments on the account were due within 30 days after purchase, such regular payments were often delayed because of the nature of the farming business. In fact, payments were made in erratic amounts as farm income was received." *Id.* at 927.

The court in *Butz*, however, rejected the creditor's argument that the exception of § 547(c)(2) was applicable for an analysis of the debtor's purchases on account and payments in satisfaction of those accounts demonstrated that the payment in question did not cover expenses incurred in the 45 days prior to the payment. In the instant matter, however, the creditor has established that the payment covered a transfer made within 45 days thereof. More importantly for the instant matter, the court in *Butz* accepted the practice between the debtor and the creditor of erratic payments as within the requirement of § 547(c)(2) that payments be made in the ordinary business or financial affairs of the debtor and creditor.

The Court's holding herein is also supported by the decision in *In re Brown*, 20

ber 24, 1980, which also satisfied the pre-December 1, 1980 debt of $4,558.88.

B.R. 554 (Bankr.S.D.N.Y.1982) .where the court applied the 45-day exception rule to certain charges stating that a debtor may pay for any transaction occurring within the preceding 45-day period without fear of avoidance by the trustee. 20 B.R. at 556. The court permitted an avoidance of certain transfers as preferences only where the creditor failed to establish that the debts were incurred within the 45-day exception period. Moreover, the court was not concerned with the debtor's prior conduct in allowing the account to accumulate and not paying the balance off on a monthly basis.

In *In re Butz (Butz v. Bancohio National Bank)*, 31 B.R. 893 (Bankr.S.D.Ohio 1983), the conflict was once again between the trustee seeking to avoid payments as preferences and the creditor contending that the payments fell within the exception of § 547(c)(2). The trustee argued there, as the trustee argues in the instant matter, that the payments on the account were not in the ordinary course of the debtor's financial affairs. In rejecting the trustee's argument, the Court stated that "the cases involving such arrangements routinely [hold] that payments on general credit card accounts may be accepted pursuant to 11 U.S.C. § 547(c)(2) if the payments were traceable to obligations incurred within 45 days of the date of payment." 31 B.R. at 896. It is significant to note that in that matter the debtor routinely made payments on his outstanding account indebtedness which represented a substantial portion of the balance owing at the time of the questionable transfer. The court did not find relevant the debtor's failure to pay the full balance on a regular basis. In addition, the court specifically found that the debtor's increased use of the account during the 90 days immediately prior to filing the petition in bankruptcy was not a sufficient deviation from the usual course of conduct between the parties to find that the debt was not incurred in the ordinary course of the business or financial affairs of the debtor and creditor. 31 B.R. at 896.

With this case law in mind and in light of the specific facts found by this Court it is the opinion of this Court that Greensville has adequately established that the trans-

fer represented by the $12,499.32 check falls within the exception of 11 U.S.C. § 547(c)(2). As such, the transfer is valid and not subject to avoidance by the trustee although but for the exception of § 547(c)(2) the transfer would have been avoidable as preferential pursuant to 11 U.S.C. § 547(b).

An appropriate Order will issue.

### APPENDIX

During the relevant time periods, the debtor made the following charges and payments with Greensville:

| Date | Charges | Payments | Balance |
| --- | --- | --- | --- |
| November 18, 1980 | | | $17,640.23 |
| November 19, 1980 | | $16,000.00 | 1,640.23 |
| November 28, 1980 | $2,848.64 | | 4,488.88 |
| | 70.00 | | 4,558.88 |
| December 4, 1980 | 1,702.59 | | 6,261.47 |
| | 35.00 | | 6,296.47 |
| December 8, 1980 | 40.50 | | 6,336.97 |
| December 11, 1980 | 68.38 | | 6,405.35 |
| December 12, 1980 | 2,794.05 | | 9,199.40 |
| | 62.45 | | 9,261.85 |
| | 17.30 | | 9,279.15 |
| December 16, 1980 | 7.05 | | 9,286.20 |
| December 19, 1980 | 2,314.97 | | 11,601.17 |
| December 20, 1980 | 19.50 | | 11,620.67 |
| December 24, 1980 | | 5,000.00 | 6,620.67 |
| | 21.15 | | 6,641.82 |
| December 26, 1980 | 2,285.51 | | 8,927.33 |
| January 5, 1981 | 8.65 | | 8,935.98 |
| January 6, 1981 | 3,384.98 | | 12,320.96 |
| January 12, 1981 | 133.91 | | 12,454.87 |
| January 13, 1981 | 44.45 | | 12,499.32 |
| January 15, 1981 | | 12,499.32 | 00.00 |