In re Peter J. **DEMETRALIS** individually, and d/b/a "Y" Food Mart and "Y" Liquor Mart, a/k/a Yorkville "Y" Liquor Mart, a/k/a Yorkville "Y" Food Mart, Debtor,

Peter J. **DEMETRALIS**,
Debtor-In-Possession,
Plaintiff,

v.

**GOLDEN GUERNSEY, INC.**, a/k/a Golden Guernsey Dairy Co-Op, Defendant.

Bankruptcy Nos. 84 B 1516, 84 A 480.

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 28, 1986.

Richard H. Fimoff, Keith J. Shapiro, Denise A. De Laurent, Holleb & Coff, Chicago, Ill., for debtor.

Rance V. Buehler, Faber & Buehler, West Dundee, Ill., for creditor, Golden Guernsey.

MEMORANDUM AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

The debtor-in-possession, Peter J. Demetralis, instituted this adversary proceeding against Golden Guernsey, Inc. to recover four alleged preferential transfers under 11 U.S.C. § 547.[1] The debtor has filed a

---

1. Of course, a Chapter 11 debtor-in-possession, even an individual Chapter 11 debtor as in this case, has the avoiding powers of a trustee, in-

motion for summary judgment. In analyzing the motion, all contested facts must be viewed from the point of view most favorable to the party against whom summary judgment is sought. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *International Administrators v. Life Insurance Co. of North America*, 753 F.2d 1373, 1378 (7th Cir.1985); *Burman v. Trans. World Airlines, Inc.*, 570 F.Supp. 1303, 1312 (N.D.Ill. 1983).

The facts surrounding the payments in this case are not in dispute although the parties strongly differ on the significance of those facts in preference terms. The debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 7, 1984. The debtor runs a retail grocery store. He purchased dairy products from the defendant on an open account. During the 90 days preceding the petition the debtor paid for certain dairy deliveries with four separate checks:

(1) The defendant delivered goods on May 28, 1983 and charged $2,826.36 to the debtor's account. On November 9, 1983 the defendant received a check for $2,826.36, which it posted on its account ledger as payment for the May 28, 1983 delivery.

(2) The defendant delivered goods on August 13, 1983 and charged $2,031.44 to the debtor's account. On December 5, 1983 the defendant received a check for $2,031.44, which it posted on its account ledger as payment for the August 13, 1983 delivery.

(3) The defendant delivered goods on October 29, 1983 and charged $236.99 to the debtor's account. The debtor made out two checks, allegedly as payment for this delivery and other outstanding debts: on December 28, 1983 the defendant received a check for $1,000.00 and on January 4, 1984 the defendant received a check for $500.00. The defendant did not post these checks as applying to any particular delivery, but applied them generally to the debtor's account.

The ultimate issue is to what extent each of the four payments constitutes a preference under 11 U.S.C. § 547(b).

## A. *Section 547—Preference*

Under 11 U.S.C. § 547(b), the trustee must prove six elements for a transaction to be avoidable as a preference:[2] (1) a transfer of the debtor's property (2) to or for the benefit of a creditor (3) on account of antecedent debt (4) made while the debtor was insolvent (5) on or within 90 days before the filing of the petition[3] (6) where such transfer allows the creditor to receive a greater percentage of the debtor's estate than it would have received had the transfer not taken place and had the debtor's assets been liquidated and distributed in a Chapter 7 case.

### 1. *"Insolvency" Analysis*

In opposing the motion for summary judgment, the defendant first argues the debtor has failed to present sufficient evidence to establish his insolvency at the time of the challenged transfers. Thus, Golden Guernsey contends a genuine issue of fact exists with respect to the question of whether the debtor was insolvent at the time of the transfers, and the motion for summary judgment must be denied.

 Section 547(f) creates a presumption the debtor was insolvent during the 90 days prior to filing his bankruptcy petition. *See also Barash v. Public Finance Corp.*, 658 F.2d 504, 507 (7th Cir.1981). The presumption is not conclusive. It is rebuttable. Thus, although the burden of persuasion regarding insolvency remains with the debtor, the defendant here must come

cluding the power to set aside preferential transfers. 11 U.S.C. § 1107(a).

**2.** The date of the petition, February 7, 1984, causes this proceeding be governed by § 547 as it read before the 1984 amendments. *See* Pub.L. 98–353, § 553.

**3.** The 90-day period is extended to one year in certain circumstances where the creditor receiving the transfer is an insider. *See* 11 U.S.C. § 547(b)(4)(B). There is no allegation that the defendant in this proceeding was an insider.

forward with evidence to rebut it.[4] *Matter of Kennesaw*, 32 B.R. 799, 803 (Bankr.N.D. Ga.1983); *In re National Buy-Rite, Inc.*, 7 B.R. 407, 410 (Bankr.N.D.Ga.1980); *In re Butler*, 3 B.R. 182, 180 (Bankr.E.D.Tenn. 1980). This analysis also is mandated by Federal Rule of Evidence 301, which states that "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion...."

■ The defendant has made only a bare allegation of the debtor's solvency at the time of the transactions. Such a statement does not constitute evidence to rebut the presumption of insolvency. The defendant has presented no evidence, by affidavit or otherwise, that the debtor's assets exceeded his liabilities at the relevant times. *See In re Bennett*, 35 B.R. 357, 359 (Bankr.N. D.Ill.1984). Therefore, no genuine issue of material fact exists regarding insolvency and the debtor is entitled to summary judgment on this point. *See Matter of Kennesaw*, 32 B.R. 799, 803 (Bankr.N.D.Ga.1983); *In re National Buy-Rite, Inc.*, 7 B.R. 407, 410 (Bankr.N.D.Ga.1980).

### 2. *"Greater Percentage" Analysis*

The defendant also argues that the debtor has failed to present sufficient evidence to establish that the transfers enabled the defendant to fare better than it would have had the transfers not occurred and the debtor's estate been liquidated in Chapter 7. As a practical matter, this element is almost always satisfied where the debtor transfers property to an unsecured creditor, such as the defendant in this case, and such creditor would receive less than 100%

in a Chapter 7 liquidation.[5] This is true because this preference element assumes that the creditor receiving the transfer will keep the payment and file a proof of claim in the hypothetical Chapter 7 case for any unpaid balance and then receive a distribution on that claim.

■ In making this "greater percentage" analysis, a bankruptcy court may take judicial notice of the debtor's bankruptcy case as a whole, including all documents filed in the case. *In re Saco Local Development Corp.*, 30 B.R. 862, 865 (Bankr.D. Me.1983). A review of the debtor's schedules in this case reveals that nonpriority unsecured creditors such as Golden Guernsey will receive far less than a 100% return on their claims. In fact, it appears that exemptions, secured claims, and administrative and priority claims would exhaust the debtor's estate in a hypothetical Chapter 7 liquidation, leaving no assets for distribution to unsecured creditors. Therefore, no genuine issue of fact exists on the greater percentage question. Golden Guernsey was in fact preferred by the transfers.

### 3. *Partial Preference Analysis—Section 547(c)(2)*

The defendant argues further that even if the four payments it received were preferential, only a portion of those four payments constituted a preference under 11 U.S.C. § 547. The defendant acknowledges the transfers resulting from the third and fourth checks received from the debtor on December 28, 1983 and January 5, 1984 totalling $1,500.00 satisfy all the elements of a preference. Golden Guern-

---

**4.** The debtor does not rely solely on § 547(f)'s presumption of insolvency. The debtor submitted his own affidavit that alleges his insolvency when the transactions occurred. The defendant in response has not alleged specific facts showing there is a genuine issue regarding insolvency. Summary judgment is therefore appropriate on this ground based on Fed.R.Civ.P. 56(e): *see also* Bankruptcy Rule 7056.

**5.** *Barash v. Public Finance·Corp.*, 658 F.2d 504, 508–09 (7th Cir.1981). This element might not be satisfied, however, where the unsecured creditor agreed to accept a percentage of what he or she is owed as payment in full and where such percentage was less than that which the class to which the creditor would belong would have received in a Chapter 7 distribution had the transfer not taken place. There is no allegation the defendant in this case made such an agreement.

sey further concedes that as to those payments, it has no defenses available under § 547(c) and those payments may be recovered by the debtor.[6] The defendant claims, however, the first two payments it received during the preference period are at least partially protected under the § 547(c)(2) exception to avoidable preferences.

The pre-1984 version of § 547(c)(2) prevents the trustee from avoiding a preferential transfer (1) made in the ordinary course of the debtor's business (2) in payment of a debt incurred by the debtor in the ordinary course of business (3) made according to ordinary business terms and (4) made not later than 45 days after such debt was incurred. It is clear the first three elements of the exception are present. The only question here is whether

6. The defendant conditioned this admission on our rejecting its allegation the debtor failed to present sufficient evidence to establish the debtor was insolvent and the debtor's estate, if liquidated, would have resulted in a preference to the defendant. Debtor's Brief Opposing Summary Judgment at 7. We have denied these allegations and, therefore, accept the defendant's limited admission.

7. The 45 day payment restriction was omitted from § 547(c)(2) by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"). This case was filed on February 7, 1984; thus, this case is governed by pre-BAFJA law because BAFJA is applicable only to cases filed on or after October 9, 1984. *See In re Quality Holstein Leasing, Inc.*, 46 B.R. 70, 72 (Bankr.N.D.Tex.1985).

8. The defendant argues the Court should look back 45 days from November 9, and December 5, 1983, the dates it received the first two payments, to determine what debts were incurred in that period. During these two 45 day periods the debtor was charged for deliveries of milk that totalled $6,401.47. Specifically, the following charges occurred:

| | |
|---|---|
| September 30, 1983 | $2,457.15 |
| October 8, 1983 | 1,793.04 |
| October 15, 1983 | 1,914.29 |
| October 29, 1983 | 236.99 |
| | $6,401.47 |

The defendant claims the November 9, 1983 payment was in partial satisfaction of the charges incurred between September 30, 1983 and October 29, 1983, all of which were within 45 days of November 9. Under the defendant's § 547(c)(2) analysis, the debtor is entitled to a

the transfer took place within 45 days of the time the debt was incurred.[7]

The defendant claims that the challenged payments were partial payments against the total balance due under a running account. The defendant thereby asks the Court to look back 45 days from the date of each of the first two payments to determine what debts were incurred in that period. According to the defendant, the debtor is entitled to recover preferential payments only to the extent of $3,294.45.[8] In support of this conclusion defendant cites *In re Ferguson (Canfield v. Greenville Feed Mill)*, 41 B.R. 118 (Bankr.E.D.Va.1984) as allegedly standing for the proposition that payments on an open running account apply to the most recent obligation first. This is not the rule of *Canfield*. Rather, *Canfield* stated in dicta that payments on

preference to the extent of $3,294.45 based upon the following analysis:

| | Date of Payment | Amount | Extent of Recoverable Preference under § 547(c)(2) |
|---|---|---|---|
| a. | November 9, 1983 | $2,826.36 | .00 |
| b. | December 5, 1983 | 2,031.44 | 1,794.45 |
| | ($2,031.44 less $236.99 shipment of 10/29/83) | | |
| c. | December 24, 1983 | 1,000.00 | 1,000.00 |
| d. | January 9, 1984 | 500.00 | 500.00 |
| | TOTAL | $6,357.80 | $3,294.45 |

In essence, defendant suggests the November 9 and December 5, 1983 payments were made to cover debts incurred within the 45 days preceding the payment dates. The evidence does not support this conclusion. Instead the undisputed facts clearly support the debtor's analysis of the situation. The amounts paid by the debtor correspond to the penny to the amounts owed by the debtor for two specific shipments delivered more than 45 days preceding the payment date. The debtor paid for the $2,826.36 shipment of May 28, 1983 with a check for that exact sum on November 9, 1983. Likewise, the debtor paid for the $2,031.44 shipment of August 13, 1983 with a check for that exact sum on December 5, 1983. These amounts are reflected on the defendant's own account ledgers. That these checks correspond to those payments is further buttressed by the fact that the checks were credited against these very shipments on the defendant's own account ledger. Given the precise identity in amounts and the defendant's treatment of those payments, no amount of testimony could convince this Court that both the debtor and the defendant did not intend those payments to be in satisfaction of the shipments of May 28, 1983 and August 13, 1983 respectively. There is no *genuine* issue of material fact on this point.

an open account apply to the oldest obligation first.[9] *Id.* at 120. This approach is consistent with the law in Illinois, which applies the general rule that if the debtor or creditor fails to direct the application of a particular payment, the court will ordinarily apply it to the first item due. *Griffin Wellpoint Corp. v. Engelhardt Inc.*, 92 Ill.App.3d 252, 262, 46 Ill.Dec. 888, 896, 414 N.E.2d 941, 949 (2nd Dist.1980). *See also Liese v. Hentze*, 326 Ill. 633, 639, 158 N.E. 428, 430 (1927).

■ In the case at bar, the debtor in his affidavit states that it was his practice to pay for specific deliveries by check in an amount exactly equal to a specific debt rather than make general payments on open account. In fact, each payment made by the debtor on its account (up until the last two payments) was made in odd dollars and cents precisely corresponding to a specific debt being paid as evidenced by the defendant's practice of checking off payments made for specific deliveries on its account ledger. The debtor's practice of making checks in the amount of specific debts and the defendant's practice of checking off these payments on its ledger

accordingly make the debtor's and defendant's intention to apply the checks to specific debts clear beyond rational argument. The facts do not permit of any other conclusion.[10] The only remaining question, therefore, is whether any debts were incurred within 45 days of the November 9, and December 5, 1983 payments.[11]

■ There is clear majority rule on the question of when a debt is incurred for preference purposes. Most courts, including the United States Court of Appeals for the Seventh Circuit and this Court, have held a debt is incurred for purposes of § 547(c)(2) when the debtor becomes legally obligated to pay. *See Barash v. Public Finance Corp.*, 658 F.2d 504, 510 (7th Cir. 1981); *Matter of Almarc Mfg., Inc.*, 52 B.R. 582, 585 (Bankr.N.D.Ill.1985); *See also In re Gold Coast Seed* 751 F.2d 1118, 1119 (9th Cir.1985); *In re Wathen's Elevators*, 37 B.R. 870, 871 (Bankr.W.D.Ky. 1984); *Richter & Phillips Jewelers*, 31 B.R. 512, 515 (Bankr.S.D.Ohio 1983); *In re Super Market Distributors Corp.*, 25 B.R. 63, 66 (Bankr.D.Mass.1982); *Matter of Advance Glove Mfg. Co.*, 25 B.R. 521, 524

9. *Canfield* is clearly distinguishable from the case at bar. In *Canfield,* the debtor was paid-up on its account with its supplier-creditor prior to the commencement of the 45 day period preceding the bankruptcy petition. During that 45 day period the debtor received new shipments from its supplier, thereby incurring new debt. The *Canfield* court held satisfaction of this "new" debt was not recoverable as a preference because the debts were paid within 45 days of when they were incurred and the other elements of § 547(c)(2) were satisfied.

While it is true that in both *Canfield* and this case the debtor received goods within the 45 day period, the crucial difference in this case is that the debtor also had unpaid obligations remaining for shipments outside of the 45 day period at the time of payment. If no such outstanding balance existed the debtor's payments would fall within the bounds of § 547(c)(2). The debtor, however, owed the defendant money for shipments received prior to the 45 day period in issue and the November and December payments must first be applied to these obligations for reasons explained immediately *infra* in the text.

10. Defendant claims application of the debtor's payments on its own ledger was merely for

purposes of cross checking total debts against total credits for internal bookkeeping purposes. An affidavit submitted by a vice-president of Golden Guernsey supports this claim. The ledger, however, was attached to the proof of claim the defendant filed with this Court. It is a simple document to interpret. Testimony is not required to explain it. *Cf. Associated Lumber Industries, Inc. v. Grammer*, 54 Ill.App.3d 39, 12 Ill.Dec. 33, 369 N.E.2d 530 (5th Dist.1977). The ledger clearly indicates the defendant applied the debtor's first two payments to specific debts, not to a general account.

11. Although the parties have not addressed this point, the Court feels compelled to reiterate its holding in an earlier case that a transfer does not occur for preference purposes until the transferor's bank honors the check. *See Matter of Almarc Mfg., Inc.*, 52 B.R. 582, 584 (Bankr.N. D.Ill.1985); *see also Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288, 1293 (7th Cir.1974). The November 9 check was honored by the debtor's bank on November 14, 1983. The December 5 check was honored on December 7, 1983. Debtor's Reply Brief at 7. The transfers thus actually occurred on November 14 and December 7, 1983. The resolution of the dispute in this case, however, does not hinge on this distinction.

(Bankr.E.D.Mich.1982). The legal obligation to pay arises either on shipment or delivery, depending on the contractual agreement.[12] *Id.* The date of invoicing or the date payment is due is not the date the debt was incurred. *Matter Emerald Oil Co.,* 695 F.2d 833, 837 (5th Cir.1983); *Richter & Phillips Jewelers,* 31 B.R. at 515. The logic of this conclusion is inescapable. If the debtor had filed Chapter 11 before the invoice date but after the shipment date, it is hard to imagine the defendant would have been unable to assert a claim in the case. *See* 11 U.S.C. §§ 101(4), (11). *See also Matter of Almarc Mfg., Inc.,* 52 B.R. 582, 585 (Bankr.N.D.Ill.1985).

█ In the case at bar, the transfers were not made within 45 days of the time any of the debts were incurred. As indicated by the defendant's account ledger, the payment of $2,826.31 on November 9, 1983 was for a delivery on May 28, 1983, and the payment of $2,031.44 on December 5, 1983 was for a delivery on August 13, 1983. These November and December payments were made more than 45 days after the specific debts were incurred. These payments fall outside the realm of § 547(c)(2) and, therefore, constitute avoidable preferential payments.

#### 4. *Summary*

All six elements of a preference under § 547(b) are present with respect to all four of the debtor's challenged payments. Because the first two payments are not excepted from avoidance by § 547(c)(2), the defendant has received voidable preferential payments under § 547(b) to the full extent of the four payments, $6,357.80.

### B. *Prejudgment Interest*

█ The debtor also seeks interest on the $6,357.80. It is well settled that in an action to set aside a preference the trustee or debtor is entitled to prejudgment interest from the date of demand for its return, or, in the absence of a prior demand, from the date of commencement of the adversary proceeding. *In re Independent Clearing House Co.,* 41 B.R. 985, 1015 (Bankr.D.Utah 1984); *See also Kaufman v. Tredway,* 195 U.S. 271, 273, 25 S.Ct. 33, 34, 49 L.Ed. 190 (1904); *Palmer v. Radio Corporation of America,* 453 F.2d 1133, 1140 (5th Cir.1971); *Waite v. Second National Bank of Belvidere, Ill.,* 168 F.2d 984, 987–88 (7th Cir.1948). According to the *Independent Clearing House* court:

> The allowance of interest from the date demand is made or a proceeding instituted, is based on the idea that until such time the preferred creditor cannot be said to hold the property wrongfully. A transaction which results in a voidable preference is lawful when made but subject to the possibility of being defeated by subsequent events. It continues to be lawful unless it is followed by the filing of a bankruptcy petition within 90 days. It continues to be lawful after that time unless the trustee elects to avoid it. Until the trustee exercises his election and makes demand for the transfer the creditor's possession of the property is proper.

*In re Independent Clearing House Co.,* 41 B.R. at 1015.

These considerations prompt this Court to grant the debtor's request for interest. There is no evidence that a demand for repayment was made by the debtor before this proceeding was filed. Therefore, the debtor is entitled to prejudgment interest at the legal rate on the preferential payments since April 23, 1984, the date this adversary proceeding was filed.[13]

### C. *Attorneys Fees*

The debtor also seeks attorney fees incurred in conjunction with this action. The "American Rule" holds, absent bad faith on the part of the defendant or statutory authority, no such award should be made. *Alyeska Pipeline Co.*

---

12. The difference between shipping date and delivery date is irrelevant as the goods seem to have been shipped and delivered on the same date.

13. The Clerk's office has advised this Court that the legal rate of interest at the time this action was filed was 10.81%.

*v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) as cited in *In re Taylor,* 8 B.R. 578, 581 (Bankr. E.D.Pa.1981). We therefore deny the debtor's request for attorneys fees.

### D. *Conclusion*

Based on the foregoing, the debtor's motion for summary judgment against Golden Guernsey in the amount of $6,357.80 plus interest at the legal rate is granted. No attorneys fees shall be awarded in connection with the above motion.