**In re Thomas MATTERS, IV, Debtor.**

**John G. LEAKE, Trustee for Thomas Matters, IV., Plaintiff,**

v.

**Alan C. NICOL Vivian M. Nicol, t/a The Printing Express, Defendants.**

Bankruptcy No. 5–88–00208.
Adv. No. 5–88–0035.

United States Bankruptcy Court,
W.D. Virginia,
Harrisonburg Division.

March 31, 1989.

Douglas T. Stark, Harrisonburg, Va., for trustee.

Alan C. Nicol and Vivian M. Nicol, t/a The Printing Express, Harrisonburg, Va., pro se.

## MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

The matter before the Court for decision involves a complaint filed by John G. Leake (Trustee) to avoid preferential transfers from Thomas Matters, IV (Debtor), to Alan C. Nicol and Vivian M. Nicol, t/a The Printing Express (Defendants). A trial was held on December 19, 1988, and this Court took the matter under advisement. The following constitutes the Court's findings of fact and rulings of law.

## FACTS

The Defendants furnished the Debtor with services and supplies on credit on numerous occasions for a period of over two years prior to the filing of Debtor's petition for relief. The evidence shows that from January 1986, the Defendants sent monthly invoices to the Debtor. Pursuant to the terms of the invoice, the Debtor was to pay his account within ten (10) days. The invoice noted that a 1½% per month service charge would be added to all past due accounts. The invoices received by the Debtor were the same type as were sent to all Defendants' customers. The Debtor never complied with the invoice terms and his account grew from a beginning balance of $270.77 on January 1, 1986 to a balance of $1,279.85 on March 1, 1988. In fact, the Debtor developed a pattern of sporadic payments which did not always match amounts which had been invoiced. The Defendants did not complain about Debtor's payment schedule and continued to provide services and supplies during this period. *See* Defendants' Exhibit B.

On March 10, 1988, the Debtor tendered a check in the amount of $505.41 to the Defendants. On March 30, 1988, the Debtor tendered a check in the amount of $980.28 which satisfied the Debtor's account in full. The Debtor filed a voluntary petition under Chapter 7 on May 10, 1988. The Trustee filed this adversary proceeding to avoid the March 10 and March 30, 1988 transfers as preferential pursuant to section 547(b) of the Bankruptcy Code. The Defendants' sole ground of defense is that the transfers meet the "ordinary course of business" exception of section 547(c)(2) of the Bankruptcy Code.

## LAW

Both parties agree that the payments satisfy all the elements of a preferential transfer. The sole issue for this Court to decide is whether the transfers are protected by the "ordinary course of business" exception of section 547(c)(2). To prevail under section 547(c)(2), the proof must show that the transfers were "(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms." 11 U.S.C. § 547(c)(2). The burden is on the creditor to establish the section 547(c)(2) affirmative defense. *In re Ewald Bros. Inc.*, 45 B.R. 52, 56 (Bankr.Minn.1984).

The evidence demonstrates that the Debtor purchased supplies and services from the Defendants on account since January 1986. Thus, this Court holds that the

debts were incurred in the ordinary course of the Debtor's and Defendants' business affairs. The evidence and argument at trial was directed toward whether the transfers were made in the ordinary course of the Debtor's and the Defendants' business and according to ordinary business terms. The Defendants introduced historical data to establish that the Debtor regularly made untimely payments. The Trustee, however, argued that untimely payments were outside the protection of section 547(c)(2) as a matter of law.

The Bankruptcy Appellate Panel in *In re Gold Coast Seed Co.*, 24 B.R. 595, 597 (9th Cir.BAP 1982), noted that late payments, among other factors, would take a transfer outside the protection of section 547(c)(2) as a matter of law. However, several cases have weighed the importance of lateness with other factors in evaluating the ordinary course exception. *In re White*, 64 B.R. 843, 848 (Bankr.E.D.Tenn. 1986), *In re Mindy's, Inc.*, 17 B.R. 177 (Bankr.S.D.Ohio 1982). This Court holds that, in determining whether a transfer is within the ordinary course of business, the Court should examine the parties' past course of dealing as well as lateness of payment.

The bankruptcy court in *In re Ferguson*, 41 B.R. 118 (Bankr.E.D.Va.1984) held that a $12,499.32 payment which satisfied the debtor's entire outstanding indebtedness fell within the "ordinary course of business exception." *Id.* at 121. In *Ferguson* the debtor purchased feed and supplies on credit and was obligated to pay his accounts by the fifth day of the month following billing. *Id.* at 119. However, rarely did the debtor's payments match the invoices for the billing period. The *Ferguson* court noted that the debtor's payments did not substantially reduce his indebtedness. Prior to the disputed transfer, the debtor made transfers of $16,000.00 and $5,000.00, respectively. Finally, the debtor made a payment of $12,499.32, within the preference period, which satisfied his total indebtedness.

In holding that the payment of $12,-499.32 was made in the ordinary course of business and according to ordinary business terms, the *Ferguson* court examined the prior course of conduct between the parties. The *Ferguson* court found that the payment was not extraordinary when compared to the two prior payments totalling $21,000.00. It was the ordinary practice of the debtor in *Ferguson* to make eratic payments to the creditor by paying "what he could against the outstanding indebtedness when he could make certain payments." *Id.* at 121. The *Ferguson* court further found that the creditor accepted the debtor's course of conduct, thus establishing the conduct as the ordinary course of business. *Id.* Finally, the *Ferguson* court accepted the debtor's explanation that he paid off his entire indebtedness because he was closing his farm business. *Id.* Thus, the *Ferguson* court held that the transfer fell within the protection of section 547(c)(2).

The present case is similar to *Ferguson*. According to the terms found on the Defendants' invoice, the Debtor was to make payment within ten (10) days after receiving the invoice. The facts, however, indicate that the Debtor regularly tendered late payments to the Defendants. According to a chart prepared by the Defendants, the average age of an invoice when paid by the Debtor was 26 to 146 days old. Defendants' Exhibit B. Thus, the Debtor regularly tendered payments more than 30 days late. Defendant's Exhibit B establishes that the ordinary practice between the Debtor and the Defendants was for the Debtor to sporadically reduce his indebtedness by paying whatever he could afford. The Defendants accepted this course of conduct. Testimony at trial indicated that the Defendants would "work with" the Debtor, as well as other customers, whenever there was a "pattern of payment coming in." The Defendants further stated that other customers were provided with the same arrangement. Finally, the Defendants did not exert any pressure on the Debtor to satisfy his account.

This Court finds that all the facts of this case, when taken together, reveal that it was the ordinary practice of the Defen-

dants to routinely accept late payments from the Debtor. Thus, this Court holds that the transfer of $505.41 on March 10, 1988 and the transfer of $980.28 are protected by the "ordinary course of business" exception found in section 547(c)(2) of the Bankruptcy Code.

An appropriate order will be entered implementing this memorandum opinion.