In the Matter of BRIARBROOK DEVELOPMENT CORPORATION, Debtor.

George H. CLAY, trustee for the liquidation of Briarbrook Development Corporation, Plaintiff,

v.

TRADERS BANK, Defendant.

Bankruptcy No. 80–01699–1–11.
Adv. No. 80–0388–1–11.

United States Bankruptcy Court,
W. D. Missouri, W. D.

June 11, 1981.

---

1. This amount does not include an automobile loan being paid by a codebtor.

Benjamin F. Mann, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for plaintiff.

David A. Welte, Polsinelli, White & Schulte, Kansas City, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT DENYING THE PLAINTIFF'S COMPLAINT FOR RELIEF

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff filed a two-count complaint in this adversary action on September 5, 1980. In the first count, the plaintiff sought, pursuant to section 547(b) of the Bankruptcy Code, to recover a preference allegedly conferred upon the defendant on the basis of the following allegations:

"On March 28, 1980, within ninety days before the filing of debtor's voluntary bankruptcy petition, debtor, while insolvent, did transfer to defendant an interest in certain real property and improvements thereon, which are owned by Briarbrook Development Corporation and located in Jasper County, Missouri."

In the second count, the same transfer is attacked as a "fraudulent transfer within the meaning of section 548(a)(2)" of the Bankruptcy Code.

After the period of discovery had been lengthened on the successive requests of the parties,[1] the court conducted its trial of the merits of the action on April 29, 1981. The plaintiff then appeared by Benjamin Mann, Esquire, and James Borthwick, Esquire, his counsel. The defendant appeared by David Welte, Esquire, Janet Svoboda, and Jack O'Neal, Esquire, its counsel.

The evidence then adduced admittedly did not sustain the facts alleged in count two of the complaint. Therefore, at the conclusion of the evidence, that count was orally dismissed by the court. Otherwise, the following facts were demonstrated. The debtor corporation is a wholly owned subsidiary corporation of PAL Investments, Inc. As of March 13, 1980, PAL Investments, Inc., was indebted to the defendant Traders Bank in the principal amount of $534,000.00. Another related corporation (considered by the defendant to be the same entity as the debtor[2]), Perry, Adams and Lewis Securities, Inc., was indebted to Traders Bank in the principal sum of $1,194,837.00. The principals of this complex of corporations, Jack Perry, K. R. Adams, and Norman Lewis, were indebted to

1. The pretrial order which was initially issued by the court called for the completion of discovery on or before November 28, 1980. At the request of the plaintiff, the court entered an order on November 12, 1980, extending discovery to December 12, 1980. On December 8, 1980, the defendant moved for enlargement of the discovery period. The court obliged by entering its order extending discovery to February 9, 1981. On February 6, 1981, on the joint motion of the parties, discovery was enlarged again, this time to and including April 3, 1981.

2. It is the plaintiff's contention that all of the debtors must be considered as a single entity in determining whether the elements of section 547 are present in this case. To support this contention, plaintiff has presented without objection the deposition testimony of George Lehr, the chief executive officer of the defendant bank, to the effect that he so considered the debtor organizations and their principals—albeit from an "economic," as opposed to "legal," point of view.

Traders Bank in the principal amount of $125,000.00. On March 14, 1980, Briarbrook Development Corporation made a promissory note and executed a deed of trust, which was recorded on March 14, 1980 (and re-recorded on March 28, 1980, to correct an error in the legal description). The property which was the subject of the deed of trust is described as follows:

All of the Southeast Quarter (SE¼) of the Northeast Quarter (NE¼) of Section 8, lying South and East of the center line of Center Creek.

All of the Southwest Quarter (SW¼) of Section 9.

That part of the South Half (S½) of the Southeast Quarter (SE¼) of Section 9, lying South and West of Kansas City Southern Railroad right of way.

That part of the Northwest Quarter (NW¼) of Section 9 lying south of Center Creek.

All that part of the North Half (N½) of Section 9, lying West of old Highway No. 57 and East of Kansas City Southern Railroad right of way.

That part of the Northwest Quarter (NW¼) of the Southeast Quarter (SE¼) of Section 8, lying West of the Frisco Railroad main line to Joplin, except the Southerly 250 feet thereof and all that part of the Southeast Quarter (SE¼) of Section 8 lying North and East of Frisco Railroad main line to Joplin,

Excluding from all the above described lands that part which has been platted as Briarbrook First Subdivision in Carl Junction, Jasper County, Missouri, except for those lots originally shown on this deed of trust which remain subject hereto,

All in the County of Jasper, State of Missouri.

The note then executed by Briarbrook Development Corporation to the Traders Bank was in the principal sum of $1,854,000.00, payable on demand with interest at the "Traders Bank established prime interest rate floating daily." No funds were advanced by Traders Bank to Briarbrook, PAL Investments, Inc., Perry, Adams and Lewis Securities, Inc., or to Jack Perry, K.R. Adams and Norman Lewis in connection with this transaction or at any time within the 90 day period preceding the date of the petition for relief. Rather, the note and deed of trust were executed on account of the pre-existing indebtednesses of the allied corporations and individuals, as described above. The parties have stipulated in writing that:

"(t)he transfer of interest in property made by Briarbrook on March 14, 1980 and evidenced by the aforementioned deed of trust was to secure the antecedent indebtedness of PAL, Securities, and Jack Perry, K.R. Adams and Norman Lewis to Traders, which, in the aggregate, totaled $1,854,000.00."

The parties have further stipulated that the transfer of March 14, 1980, enabled the defendant Traders Bank "to receive more than it would receive if . . . the liquidation proceedings of Briarbrook were under chapter 7 of the Bankruptcy Code and the transfer had not been made and Traders received payment of its debt to the extent provided by the provisions of the Bankruptcy Code." With respect to the value of the real property which was the subject of the transfer, it is stipulated by the parties that:

"On October 7, 1980, R. L. Harrison, M.A.I., of Realty Mortgage and Appraisals, Inc., 1740–R South Glenstone, Springfield, Missouri, appraised the fair market value of the Briarbrook real property, as of September 15, 1980, to be $1,066,500.00.

"On November 24, 1980, Terry H. Van-Tuyl, M.A.I., S.R.P.A., of the Dorchester Companies, Suite 3005, 1722 South Carson, Tulsa, Oklahoma, appraised the fair market value of the Briarbrook real property, as of September 15, 1980, to be $1,250,000.00."

On the issue of insolvency on the date of the transfer, the plaintiff produced the testimony of a certified public accountant who had reviewed the books and records of the debtor corporations and who was familiar with the financial history and transactions of those corporations. It was his testimony

that, as of March 14, 1980,[3] the value of the assets of the debtor corporations was $2,038,000. Liabilities were in the sum of $4,174,650. Thus, on the date in question, liabilities exceeded assets by a difference of approximately $2,000,000.00.

According to the testimony of this witness, the assets of one of the corporations, Perry, Adams and Lewis Securities, Inc., include some $302,807 in value of bonds of "doubtful marketability" which have a total par value of $1,343,000. The value of these bonds was the subject of extensive cross-examination of the witness by counsel for the defendant. In the course of this cross-examination, the witness admitted that he was generally "unfamiliar with bonds";[4] that the figures to which he testified (and presented in written form as a balance sheet) were, in this regard, "from appraisals of experts"; and that the experts were "not here today," that is, on the date of the hearing. No explanation was given as to why the experts upon whose qualifications, familiarity with market conditions and the like the values depended were not presented as witnesses. Nor was there any evidence that payment on these bonds could not be obtained.

The witness presented by the plaintiff also testified that the total liabilities figure which he had given—the $4,174,650 adverted to above—included a liability in the sum of $999,950.00 of PAL Investments, Inc., to JVM Construction and Investment Company. This liability was said to exist on account of "the purchase of bonds of Jefferson County Public Water Supply District # 7, Series 1972 and bonds issued by other entities." At the same time, it was contended by the plaintiff, through the testimony of the accountant who served as the chief witness, that the bonds themselves, although currently an asset of the debtor corporations, currently had no value by reason of the failure in 1972 of JVM Construction and Investment Company to perform the contract which would have given the bonds some value. According to his testimony, furthermore, the principals of the JVM Construction and Investment Company are the same persons as the principals of the debtor corporations. And the plaintiff's accountant witness, when testifying as to why the debtor corporations should now be regarded as nearly a million dollars in debt to JVM Construction and Investment Company for bonds which are now worthless, stated that the bonds, at the time they were sold, "had a value."

Finally, according to the plaintiff's witness on the issue of solvency *vel non*, the liabilities of the debtor corporations include some $375,000 in debts to the principals of the debtor corporations. According to the evidence, this $375,000 was borrowed from a bank or banks by the principals of the debtor corporations as their personal obligations, but it can be traced into the debtor corporations. There is no evidence that the principals, in placing this money into the debtor corporations, intended the monies to be a loan rather than a capital investment. The files and records in these chapter 7 cases demonstrate that the principals have not filed any claim against any of the debtor corporations for any of this amount. And, when directly cross-examined on this issue, the plaintiff's witness was not certain as to whether the placement of the monies into the corporations was intended as a loan or loans or as a capital investment. He was unsure whether any interest had accrued on these monies in favor of the principals, or whether any interest had been paid.

*Conclusions of Law*

The new bankruptcy law, under the provisions of section 547 of the Bankruptcy Code, grants the trustee the power to avoid

---

3. The testimony of the plaintiff's witness, as well as his written summary of his testimony, depicts an economic situation close in time to March 14, 1980. Uncontradicted, however, it is sufficiently close in time to be regarded as admissible and probative of the magnitude of assets and liabilities as of March 14, 1980.

4. The plaintiff's witness even went so far, under cross-examination, to admit that he had "no personal knowledge" of the value of the particular bonds.

a transfer as a preference if that transfer is made "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made . . . on or within 90 days before the date of the filing of the petition . . . (5) that enables the creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title." According to the stipulations and evidence which have been summarized above, all of the elements of a preference are established in this action except that of insolvency.[5]

■ On the issue of insolvency, section 547(e)(4)[6] of the Bankruptcy Code provides that, "(f)or the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." According to the legislative history under that section, "(t)he presumption requires the party against whom the presumption exists to come forward with some evidence to rebut the presumption, but the burden of proof remains on the party in whose favor the presumption exists." Thus, in the absence of any evidence on the issue of insolvency, the trustee must pre-

vail. But, if evidence is offered on the subject, the plaintiff trustee must bear the burden of persuasion.[7] Under the findings which have been made above, it cannot be concluded that the plaintiff has sustained his burden in this regard. As noted above, the witness presented by the plaintiff testified that on the date in question the liabilities of the debtor corporations exceeded their assets by $2,136,650. But, applying the principles and authorities which are applicable to his testimony, it would appear that, in fact, assets may well have exceeded liabilities on the date in question and almost certainly were at least equal to those liabilities.

■ As noted above, the plaintiff's witness testified that assets included some $302,807.00 in value of revenue bonds which had a total par value of $1,343.00. In so doing, the witness deleted $1,040,193.00 in value from the par value of the bonds, even as he confessed that he had no familiarity with the value of the bonds, nor any personal knowledge of it, and that his testimony in this regard was based upon the appraisals of other experts who were not present in court. And, as noted above, their absence was without any significant explanation. Thus, the testimony of the plaintiff's witness to the value of $302,807.00 was inadmissible hearsay.[8] And, in the absence of

---

5. Aside from the element of insolvency, the only one not stipulated to by the defendant is that of "antecedent debt." In this regard, the defendant argues that $125,000 of the value does not represent an antecedent debt of the *debtors*, but rather of the individuals, Perry, Adams and Lewis. Because of the other ruling now made, it is not necessary for the court to address this issue.

6. The pamphlet containing the sections of the Bankruptcy Code contains this citation for the relevant section. Elsewhere, however, it is cited as section 547(f).

7. According to the relevant legislative history, the presumption of insolvency in section 547 "is as defined in Rule 301 of the Federal Rules of Evidence." Rule 301 of the Federal Rules of Evidence provides that "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but it does not shift to such party the burden of burden of proof in

the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast."

8. Even if admissible, the evidence could not have any probative weight when the experts' qualifications and reasons for their opinion are not before the court to analyze. See 1 Collier on Bankruptcy para. 1.19(4), p. 130.11 (1978), to the following effect: "Ordinarily the valuation required by the Act necessitates proof by expert testimony . . . While the courts have not been particularly strict in the enforcement of minimum standards of competency and preferred to consider most objections as merely going to credibility, to be determined by the trier of facts, they have occasionally ruled out expert testimony where the witness admittedly had no familiarity at all with the type of property to be appraised." In this action, the plaintiff's witness admittedly had no familiarity at all with the bonds which are the subject of the appraisals.

other admissible evidence on the issue of the value of the bonds, it appears that the evidence of par value, adduced by the plaintiff himself, can be regarded as the admissible, uncontradicted evidence of value. "Stocks, bonds and other securities having a readily ascertained price in a normally active market should be valued at the applicable quotations for the pertinent date; but if the market is sluggish or exceptionally depressed, *or if there is no regular market* for the type of securities involved they may still be *counted at par* or with particularized deductions so long as interest payments are not in arrears and principal and interest are amply secured." 1 Collier on Bankruptcy para. 1.19, p. 127 (1978) (Emphasis added.) As noted above, there is no evidence that the bonds were not collectible according to their par value.[9]

■ Further, on the basis of the foregoing findings of fact with respect to the $375,000 which was placed into the debtor corporations by their principals, an ultimate finding is required that the infusions were regarded as capital investments rather than loans. No interest was charged by the principals or collected and no claim has been filed in these liquidation proceedings by any of them. And, as a capital investment, the $375,000 should not be included among the debtor corporations' liabilities in determining balance sheet insolvency. "(C)apital stock and surplus which commonly appear among the liabilities of corporations are not to be counted as such in the determination of solvency or insolvency." 1 Collier on Bankruptcy, para. 1.19, p. 130.4 (1978). "Similarly the right to obtain stock in return for a capital contribution . . . (is) not to be included in the aggregate of corporate debts." *Id.*

■ Finally, according to the explicit contentions of the plaintiff's witness, the $999,950 in water district bonds is to be regarded as a bona fide liability as of the date of the transfer (October 14, 1980) even though, by that time the bonds for which the debt was incurred had been rendered worthless by means of the failure of the debtors' creditor (JVM Construction and Investment Company) to perform according to its obligation. But it strains credulity for the court to believe that bonds can have worth for one purpose on the date in question and no worth for another purpose. This is especially so when the plaintiff's witness states unequivocally that the actions which made the bonds "worthless," in his opinion, took place long before the date of October 14, 1980. The reason for the assigning of approximately $1,000,000 in value as a liability and yet assigning no value at all as an asset is that the bonds had a value at the time they were sold to the debtor corporation and, further, that the debtor corporation sold some of the bonds to others at a later time—some $1.4 million in value of them, according to the testimony of the plaintiff's witness. But the latter are in no wise presented as contingent liabilities in the evidence before the court, even though the evidence clearly, in the view of the undersigned, indicates that the bonds were actually worthless on the date that they were sold to the debtor corporations.

Thus, the total of these three amounts— $999,950; $375,000; and $1,040,193.00— have erroneously been charged against the debtor corporations in making the assessment of their solvency or insolvency. Added together, they produce a total of $2,415,143.00. This is greater than the difference of $2,136,650 between liabilities and assets which the plaintiff contends to have existed on October 14, 1980. Under section 547, as under the old Bankruptcy Act, "a 'balance sheet' test will continue to determine insolvency; the debtor is insolvent when its liabilities exceed its assets." 4 Collier on Bankruptcy para. 547.26, p. 547–100 (1980). But, according to the plaintiff's own evidence in this action, the assets of the debtor corporations exceed their liabilities.[10]

Accordingly, the necessary element of insolvency did not exist as of the date of the

**9.** See note 8, *supra.*

**10.** See note 7, *supra.*

challenged transfer and the request for relief in the form of an order avoiding the transfer of October 14, 1980, must be denied.

It is therefore, for the foregoing reasons,

ADJUDGED that the plaintiff's complaint for relief be, and it is hereby, denied.