**In the Matter of PERRY, ADAMS AND LEWIS SECURITIES, INC., Pal Investments, Inc., and Briarbrook Development Corporation, Debtors.**

**George H. CLAY, trustee in bankruptcy, Plaintiff,**

v.

**C.V. DEHNER, Defendant.**

**Bankruptcy No. 80–01237–3.
Adv. No. 82–1225–3.**

United States Bankruptcy Court,
W.D. Missouri, W.D.

Aug. 30, 1983.

James Borthwick, Benjamin F. Mann, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for plaintiff.

Michael R. Roser, Berman, DeLeve, Kuchan & Chapman, Kansas City, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT DENYING PLAINTIFF'S COMPLAINT TO RECOVER ALLEGED PREFERENCE

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff trustee brings this action to recover an alleged preference conferred on the defendant. After joinder of the issues by the pleadings, the action came on before the court of bankruptcy for hearing of its merits on April 18, 1983. Thereupon, the plaintiff appeared personally and by Benjamin F. Mann, Esquire, attorney for the trustee. The defendant appeared personally and by Michael R. Roser, Esquire, his counsel.

The evidence which was then adduced demonstrated the following material facts: within 90 days of the commencement of the within title 11 proceedings, the defendant was repaid the sum of $15,000.00 earlier loaned by him to Jack Perry and the Briarbrook Development Corporation. The loan had been made on March 17, 1980. Its repayment was effected on March 19, 1983. Briarbrook's petition for relief under title 11 was filed on June 5, 1980, fewer than 90 days later. It was the defendant's understanding, in making the loan and receiving repayment of it, that he was dealing only with Briarbrook Development Corporation. His testimony to this effect was uncontradicted. To demonstrate the insolvency of the debtor as of the date of transfer, the plaintiff adduced in evidence a consolidated balance sheet of all the debtors, denominated as plaintiff's exhibit 4, to the following effect:

### "ANALYSIS OF CLAIMS AND ASSETS

| | | |
|---|---|---|
| Total Claims Filed | | $9,991,491.51 |
| Total Claims to be Allowed | | $2,753,683.00 |
| of allowed claims: | | |
| secured: | | |
| by Golf Course: | | $ 285,000 Grandvies |
| | | 14,000 Citizens Bank |
| | | $ 299,000 |
| priority: | | 31,464.65 – taxes |
| unsecured: | | $2,423,218.35 |
| Administrative Expenses | | |
| Attorney fees – paid to date | | $291,623.74 |
| Accountant's fees – paid to date | | 164,202.88 |
| (Other expenses – rent) | | |
| taxes) | – | 25,000.00 |
| insurance) | | |
| | Total | $480,826.62 |
| Assets: | | |
| Golf course | $ 850,000.00 | |
| pending cases | 350,000.00 | ($300,000 + $50,000) |
| cash | 249,569.27 | as of 3/21/83 |
| settled claim | 21,000.00 | (Traders) |
| | $1,470,569.27 | |

Distribution

| | |
|---|---|
| Assets | $1,470,569.27 |
| less secured claims | 299,000.00 |
| | 1,171,569.27 |
| less administrative expense | 480,836.62 |
| | 690,742.65 |
| less priority claims | 31,464.65 |
| | $ 659,278.00 |

Percentage pay out to unsecured creditors:
$659,278.00/$2,438,218.35 = 27.2%

If payment not made to Dehner:
$674,278.00/$2,438,218.35 = 27.65%

On cross-examination of the plaintiff, counsel for the defendant elicited the following information respecting the financial status of the Briarbrook Development Corporation:

| Assets | | Liabilities | |
|---|---|---|---|
| golf course | $1,066,000 to $1,250,000 (Tr.22) | taxes $31,464.65 (Tr.27) | |
| receivable | 112,975 (Tr.26) | unsecured claims $598,188.55 | |
| receivable | 187,371 (Tr.27) | secured claims | 299,000.00 |

### Conclusions of Law

■ In order to recover a preference, a trustee in bankruptcy must demonstrate a transfer within 90 days of the date of bankruptcy on account of an antecedent debt which permits the transferee to receive more than he would have received in chapter 7 liquidation. The trustee must also demonstrate that the debtor was insolvent at the time the transfer was made. In this regard, the trustee is aided by a presumption of insolvency in the absence of any evidence on the issue.[1] But, if and when any evidence on the issue is presented, the trustee still has the risk of non-persuasion.[2] It is clear from the facts found above that, while the consolidated balance sheet may show the debtors, all considered as one entity, were insolvent as of the date of the transfer, Briarbrook Development Corporation was itself solvent.[3] When the uncon-

1. See § 547(f) to the following effect: "For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."

2. "Subsection (f) creates a presumption of insolvency for the 90 days preceding the bankruptcy case. The presumption is as defined in Rule 301 of the Federal Rules of Evidence, made applicable in bankruptcy cases by sections 253 and 254 of the bill. The presumption requires the party against whom the presumption exists to come forward with some evidence to rebut the presumption, but the burden of proof remains on the party in whose favor the presumption exists." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 375, U.S.Code Cong. & Admin.News 1978 pp. 5787, 6331.

3. The plaintiff, in his posttrial brief, contends that evidence of the value of the assets is insufficient to constitute some evidence of solvency which causes the plaintiff, under § 547(f) to bear the risk of nonpersuasion. "Subsection (f) creates a presumption of insolvency for the 90 days preceding the bankruptcy case. The presumption is as defined in Rule 301 of the Federal Rules of Evidence [Title 28, Judiciary and Judicial Procedure] made applicable in bankruptcy cases by sections 224 and 225 of the bill. The presumption requires the party against whom the presumption exists to come forward with some evidence to rebut the presumption, but the burden of proof remains on the party in whose favor the presumption exists." Legislative History under § 547(f). It is said that

"[t]he value for the golf course—$1,066,500 —is derived from defendant's counsel's question as to whether plaintiff obtained an appraisal in such an amount, to which plaintiff responded affirmatively (Tr. 22). The appraisal was not introduced; the author of the appraisal was not identified; neither the date of the appraisal nor the valuation date was presented. In short, there is absolutely noth-

tradicted testimony of the defendant is to the effect that he dealt only with Briarbrook Development Corporation, it is the solvency or insolvency of that entity which is in issue.[4] The plaintiff relies upon the bankruptcy court order of July 29, 1980, consolidating the debtors' title 11 cases for the purposes of administration. But that order does not contain any finding or conclusion that the assets and liabilities of the debtors are identical, such as the decisions held to be necessary to effect a "substantive consolidation" identifying the several entities.[5] Further, even if it did, the order was

ing in the record to show that this figure is any reliable indication of the fair value of the property on March 18, 1980."

The testimony which is thereby adverted to concerned the plaintiff's testimony as to the existence of an appraisal in the amount of $1,066,000 to $1,250,000. Plaintiff testified to the existence of the appraisal and the amount of the appraisal. See Tr. 22 to the following effect:

"By Mr. Roser:

Q Mr. Clay, I understand that the golf course was appraised for somewhere between $1,066,00 and $1,250,00 sometime ago, is that correct?

A That's correct.

Q Did that appraisal cover the 164.8-acre tracts?

A There were two appraisals, one was a low figure and one was the high figure; and they both covered the entire property that Briarbrook owned."

At no time did the plaintiff object to the admissibility of this testimony. Under such circumstances, it possesses competence to tend to prove the solvency of the debtor and is therefore some evidence of solvency. "A failure to make a sufficient objection to evidence which is incompetent waives any ground of complaint as to the admission of the evidence. But is has another effect, equally important. If the evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of the rational persuasive power it may have. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. The incompetent evidence, unobjected to, may be relied on in argument, and alone or in part may support a verdict or finding. This principle is almost universally accepted, and it applies to any ground of incompetency under the exclusionary rules. It is most often invoked in respect to hearsay." McCormick on Evidence § 54, pp. 125–126 (1968). The testimony of plaintiff in this regard is therefore some evidence of solvency which causes plaintiff now to bear the risk of non-persuasion. The burden has not been sustained by the plaintiff, who had possession of the relevant written appraisals and could have offered them in evidence, as well as other evidence tending to prove insolvency.

The plaintiff also complains that the evidence of secured and unsecured claims against the Briarbrook Development Corporation does not give a complete picture of the total indebtedness of that entity as of the date of the challenged transfer. "The unsecured debt figure— $598,188.55—is totally unsupported by the evidence. Plaintiff testified that claims totalling $598,188.55 were filed against Briarbrook (Tr. 28). However, when he was specifically asked what was the unsecured debt of Briarbrook on March 19, 1980, he stated that he did not know (Tr. 29). The test of insolvency is a balance sheet comparison of the fair value of the debtor's assets and the debtor's *debts,* not the amount of claims filed against the estate. Creditors of a debtor, for one reason or another, may choose not to file a claim; this does not mean that the debt owed them by the debtor should be ignored for the purpose of determining insolvency." But the evidence of such claims, especially when their total falls some $450,000.00 short of the presented evidence of assets, is "some evidence" of solvency. It is not contradicted by any evidence—or even argument—that the additional debts which are not reflected by filed claims were of such magnitude as to render the debtor Briarbrook Development Corporation insolvent as of the date of the transfer.

4. This is the principal distinction between this action and *Clay v. Traders Bank,* 4 C.B.C.2d 871, 11 B.R. 515 (Bkrtcy.W.D.Mo.1980), reversed, Civil Action No. 81–0954–CV–W–4 (W.D.Mo.1981), affirmed, 708 F.2d 1347 (8th Cir.1983), in which the defendant admitted that it dealt with all of the debtor organizations as a consolidated entity. In such a case, reliance upon the consolidated balance sheet of all the debtor organizations may have been proper. But not in this action in which the testimony is clear and uncontradicted to the effect that Mr. Dehner dealt only with Briarbrook Development Corporation.

5. The order of July 29, 1980, which was drafted and filed by the court itself purports only to consolidate the cases "for administration." The basic difference between this and "substantive consolidation" is pointed out as follows in the Advisory Committee's Note to Rule 117 of the Rules of Bankruptcy Procedure:

"Although consolidation of the estates of separate bankrupts may sometimes be appropriate, as when the affairs of an individual and a corporation owned or controlled by him are so intermingled that the court cannot sepa-

merely an interlocutory order [6] and is not binding on the defendant in this action, who was not a party to the proceedings which resulted in the issuance of the order.[7]

Accordingly, on the basis of the above uncontradicted evidence as to the assets and liabilities of Briarbrook Development Corporation, it is hereby found that that entity was solvent on the date of the challenged transfer. It is therefore

ORDERED, ADJUDGED AND DECREED that the complaint for recovery of an alleged preference be, and it is hereby, denied.

rate their assets and liabilities, such consolidation, as distinguished from joint administration, is neither authorized nor prohibited by this rule since the property of consolidation depends on substantive considerations and affects the substantive rights of the creditors of the different estates, [Citations omitted.]"

At counsel's request, an order was later entered on the same subject on September 9, 1980. But its language as follows does not purport to effect "substantive consolidation":

"On July 29, 1980, this Court entered its order converting PAL Investments, Inc. and Briarbrook Development Corporation from Chapter 11 proceedings to Chapter 7 proceedings and consolidating the above three cases for liquidation by the Trustee under the provisions of Chapter 7. In order to resolve any ambiguity which may exist in said order, this Court hereby amends said order by striking the following paragraph which appears as the last paragraph on Page 3 of said order:

'ORDERED that the above proceedings be, and they are hereby, consolidated for administration by the trustee George Clay under the provisions of chapter 7 of the Bankruptcy Code.'

and inserting the following paragraph in its place:

'ORDERED that the above proceedings be, and they are hereby, consolidated *for administration* of the several estates as one estate, by the trustee George Clay under the provisions of chapter 7 of the Bankruptcy Code.'" (Emphasis added.)

6. In the absence of evidence that the debts and assets of the several entities were identical or "hopelessly commingled,"—evidence which has not been presented in this case in which it is possible to set forth separate balance sheets for each of the debtor corporations—before a consolidation order may be final, "the state of ... intercompany accounts must be ascertained to the extent that it is possible," *Matter of Gulfco Inv. Corp.*, 593 F.2d 921, 930 (10th Cir.1979), and other facts and circumstances and hence is regarded as an interlocutory order. *Id.* at 926.

7. "While (the doctrine of consolidation) does not require that the creditors knowingly deal with the corporations as a unit ... it should nevertheless be 'used sparingly' because of the possibility of unfair treatment of creditors who have dealt solely with the corporation having a surplus as opposed to those who have dealt with the related entities with deficiencies." *In re Continental Vending Machine Corp.*, 517 F.2d 997, 1001 (2d Cir.1975). "The power to consolidate should be used sparingly because of the possibility of unfair treatment of creditors of a corporate debtor who have dealt solely with that debtor without knowledge of its interrelationships with others." *Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir.1966).