In re James Ross HARTLEY, Sharon
Lee Hartley, dba Hartley
Trucking, Debtors.

Quentin M. DERRYBERRY, II,
Trustee, Plaintiff,

v.

The PEOPLES BANKING
COMPANY, Defendant.

Misc. No. 84–7014.
Adv. No. 83–0748.
Bankruptcy No. 81–01855.

United States Bankruptcy Court,
N.D. Ohio, W.D.

April 15, 1985.

Quentin M. Derryberry, II, Wapakoneta, Ohio, for trustee/plaintiff.

Mark Kreitman, Mark K. Thomas, Antonow & Fink, Chicago, Ill., for plaintiff.

Theodore M. Rowen, Kenneth J. White, Toledo, Ohio, for St. Joseph Bank.

Thomas Drake, William E. Clark, Findlay, Ohio, for defendant.

Reginald S. Jackson, Jr., Steven R. Smith, Toledo, Ohio, for Toledo Trust Co.

---

## PROPOSED FINDINGS OF FACT, PROPOSED CONCLUSIONS OF LAW AND PROPOSED ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT 4 OF THE COMPLAINT

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the court upon the Plaintiff/Trustee's motion for partial summary judgment on Count 4 of his 6 count complaint, to avoid preferential transfers pursuant to 11 U.S.C. 547(b), and upon the cross motion of the Defendant, Peoples Banking Company of McComb, (Peoples) for summary judgment of dismissal of said Count 4. The plaintiff in Count 4 of his complaint asks for judgment in the amount of $918,000 plus interest. However in the motion for partial summary judgment the request is for $500,000, which is the amount of a transfer from Midwest Emery Freight, Inc. to Peoples.

Peoples initially moved the District Court for an Order withdrawing reference. On February 9, 1984 the Honorable Nicholas J. Walinski, while finding that reference should be withdrawn, referred the entire proceeding to this Court with instructions specifying the court's powers and functions as follows: to schedule discovery, set dates for pretrial conferences, assist with possible settlement, hold pretrial conferences, enter an order placing the case on the District Court's trial calendar returning the case for trial, hear pretrial motions, and to submit proposed findings of fact, conclusions of law and a proposed order to the court for de novo review.

In accordance with Judge Walinski's mandate the undersigned hereby submits proposed findings of fact, proposed conclusions of law and a proposed order finding that the trustee has established that the receipt of $500,000 by Peoples Banking Company on June 10, 1981 constitutes a voidable preference pursuant to 11 U.S.C. § 547(b), and that, there being no genuine issue of material fact in dispute, plaintiff is entitled to partial summary judgment on Count 4 of his complaint as a matter of law.

## STATEMENT OF FACTS

The Debtor, James Ross Hartley, (Hartley) individually owned and operated a business known as The Hartley Trucking Company from 1975 to August 1981. Hartley engaged in interstate hauling of freight from its main terminal in Carey, Ohio.

From November, 1979 through May, 1981, Hartley maintained checking accounts with the Defendant, Peoples. As the result of a series of transactions occurring prior to April 28, 1981 Hartley's account was in a substantial overdraft position. On April 28, 1981 bank examiners discovered that the account was then overdrawn by approximately $1,206,800. Separate attempts were made to cover the overdraft on April 30, and May 1, 1981. Both arrangements failed because checks tendered by Hartley were returned due to stop payments which had been placed on them.

On June 2, 1981, Hartley and representatives of Peoples and Midwest Emery Freight Systems, Inc. (Midwest Emery), who leased equipment from Hartley, and their respective counsel met for the purpose of providing payment for the 1.2 million dollar overdraft. That meeting result-

ed in the execution by James Ross and Sharon Lee Hartley of the following documents:

 (a) Agreement of Settlement

 (b) $306,800 Cognovit Term Note

 (c) Security Agreement

 (d) Stock Pledge Agreement

 (e) Open-End Mortgage and Security Agreements

Those agreements and documents provided, and the court finds as undisputed, the following facts:

Hartley was indebted to Peoples on a pre-petition debt in the amount of $1,206,800 as a result of incurring overdrafts on checking accounts maintained with the bank. The debtor agreed to pay Peoples $900,000 on the closing date of the settlement by wire transfer sent to Peoples' account at National City Bank, Cleveland, Ohio, Attention: James W. Aldrich, Vice President. Hartley further agreed to pay Peoples the sum of $306,800, as evidenced by the cognovit term note, in installments of $2,000 per week commencing June 9, 1981, $2,500 per week commencing August 29, 1981 and a final balloon payment on May 31, 1985.

Under the security agreement Hartley granted Peoples and Midwest Emery security interests in all equipment, accounts, contract rights, inventory and all other property then owned or thereafter acquired by Hartley.

Pursuant to the stock pledge agreement, on June 10, 1981 the debtor executed assignments of the stock, then owned by Hartley to Peoples as follows:

 6,000 shares of stock in the Peoples Bank, Carey, Ohio;

 1,000 shares of stock in Carey Freight Management, Inc.; and

 1,000 shares of stock in Hartley Trucking, Inc.

Under the open-end mortgage and security agreements Peoples and Midwest Emery were granted mortgages upon all real property then owned by the debtor.

On June 10, 1981 pursuant to the June 2, 1981 agreement, Midwest Emery wire transferred $500,000 from a bank account in Chicago to Peoples' account at National City Bank in Cleveland, Ohio.

On September 8, 1981 the debtors filed a Chapter 7 petition in this Court seeking relief under the provisions of Title 11 of the United States Code. The trustee now seeks to avoid the $500,000 transfer as a preference pursuant to § 547(b).

This case presents three issues to be decided. First the court must determine if all the elements of a preference as specified by § 547(b) were established. Secondly the court considers the defendants contention that it was entitled to preserve the transaction under the exception provided in § 547(c)(2). The final issue is whether summary judgment, which both parties request, is appropriate under the facts and circumstances of this case.

### DISCUSSION

The trustee seeks to recover a $500,000 payment made to the defendant bank by a third party to whom the debtor granted security interests in various property. The payment was made directly to the defendant to reduce an overdraft of 1.2 million dollars which had been incurred during the preceeding months and discovered by bank examiners on April 28, 1981. The payment was made 90 days prior to the filing of the debtors bankruptcy petition. Claiming that the payment qualifies as a preference under § 547(b), the trustee now seeks its recovery.

The trustee to prevail in a preference action must establish all elements set forth in Section 547(b). *G.E. Grogan v. Southwest Textiles, Inc. (In re Advance Glove Mfg. Co.)*, 42 B.R. 489, 491 (Bankr.E.D. Mich.1984). The six elements of a preference are as follows:

 (1) any transfer of property of the debtor;

 (2) to or for the benefit of a creditor;

 (3) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(4) made while the debtor was insolvent;

(5) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(6) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The objective of the preference section of the Bankruptcy Code as stated in the House Report is to:

> Facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'The Race of Diligence' of creditors to dismember the debtor before bankruptcy furthers the goal of the preference section—that of equality of distribution.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 178 (1977). *Reprinted in* 1978 U.S.Code Cong. & Ad.News § 5787, 6138. Therefore the court must look to the effect of the transfer to assure equality of distribution.

## TRANSFER OF PROPERTY OF THE DEBTOR

It is undisputed that $500,000 was transferred via wire by Midwest Emery to Peoples' account at a bank in Cleveland on June 10, 1981 to reduce the debtor's overdraft. Sending the money by wire is contemplated by the Code in its broad definition of transfer in § 101(48) which includes:

> Every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

The issue raised by the defendant concerning this element is not if a transfer occurred but whether the property transferred was the debtors.

Peoples contends that if the property transferred did not belong to the debtor there can be no preference because creditors would not be injured as there was no reduction of the assets available to them. In support of this proposition, the defendant argues that: 1.) the $500,000 was the money of Midwest Emery and not the Hartleys; 2.) the money neither came from nor was transferred to an account in which the Hartleys had any interest or control; and 3.) was transferred directly from Midwest Emery to the defendant's bank account. Essentially Peoples relies on the "earmarked rule" as stated in *Genova v. Rivera Funeral Home (In re Castillo)*, 39 B.R. 45 (Bankr.D.Colo.1984).

The court in *Castillo* stated:

> The first element of a preferential transfer as set forth in section 547(b) requires that there be a transfer of property of the debtor. As a general rule, *Colliers* states that when a third person makes a loan to the debtor specifically to enable him to satisfy the claim of a designated creditor, the proceeds never become part of the debtor's assets, and therefore, no preference is created. *4 Colliers on Bankruptcy* § 547.25 at 547–94 (15th ed. 1983). *Colliers* continues to state that the rule is the same regardless of whether the proceeds of the loan are transferred directly by the lender to the creditor or are paid to the debtor with the understanding that they will be paid to the creditor in satisfaction of his claim, so long as such proceeds are clearly 'earmarked.' Supra, at 547–94 and 95.

**774**

*Id.* at 46. At first blush that reasoning makes sense because the debtor has not given anything away in that situation. Assuming that the creditors were on equal status it is merely a substitution. However, *Collier on Bankruptcy* discussing transfers by indirection goes on to say:

Thus, no preference is created when the parent corporation of an insolvent debtor gives the debtor funds on condition that they be used to pay a specified creditor, and they are in fact so employed. In such case, the parent in controlling the transaction and the funds never become part of the debtor's assets. Similarly, where the parent corporation gives the debtor funds on condition that they be used to pay certain creditors, but instead they are returned to the parent, the return to the parent is not a preference since the funds never become a part of the debtor's estate. The result in each case would be different if the debtor controlled the transaction, or received the funds free of any condition regarding their use. *Also, a preference would be created if the parent paid the debts of the debtor directly, but took from the debtor security good as between parent and debtor* (even though voidable by the trustee.) In such case, the money paid by the parent corporation is the consideration for the security given to it previously by the debtor, and the money is part of the debtor's assets. (emphasis added)

4 *Collier on Bankruptcy* § 547.09 p. 547–41 (15th ed. 1985) n. 1979.

 The defendant in *In re Villars*, 35 B.R. 868 (Bankr.S.D.Ohio 1983) cited *Collier* on the "earmark rule". The court held that the parties should not place "undue emphasis" on whether the funds were "earmarked" and then told them to direct their attention to the "effect" of the transfer. In the present matter the debtor as consideration for the $500,000 loan granted security interests in personal property, stock and parcels of real property as evidenced by the June 2, 1981 agreements. The effect of these agreements was to substitute a secured creditor for a previously unsecured

creditor. In *Steel Structures Inc. v. Star Mfg. Co.*, 466 F.2d 207 (6th Cir.1972) and *In re Villars, supra* the courts held that where an unsecured debt is exchanged for a secured debt the transfer results in a preference thus verifying that the debtor made a transfer of his property. Considering that Peoples received $500,000 on an unsecured debt and that Midwest Emery made the loan only after receiving security interests, the court finds there was a transfer of the debtor's property.

**TRANSFER TO OR FOR THE BENEFIT OF A CREDITOR**

The defendant has not denied that it was a creditor of Mr. Hartley or that it received the $500,000 payment to reduce its 1.2 million dollar overdraft. Section 101(9) of the Bankruptcy Code defines a creditor as an entity that has a claim against the debtor's estate. Section 101(4) of the Code defines a claim as a right to payment, whether or not the right is contingent. The court therefore finds that in light of the fact that Hartley owed Peoples 1.2 million dollars as a result of an overdraft the wire transfer of money to the defendant's bank was for the benefit of a creditor.

**FOR OR ON ACCOUNT OF AN ANTECEDENT DEBT**

The defendant does not dispute that the proceeds from the loan were paid on an antecedent debt. Instead the defendant contends that to be a preference there must be a diminution or depletion of the estate which it argues did not happen in this case.

The defendant in its own brief refers to cases which hold that if the third party advances funds to the unsecured transferee and then receives a security interest in property of the debtor in return, the unsecured creditors have been harmed because of the substitution of a secured debt for a previously unsecured debt. Those facts are identical to the situation in this case. Yet the defendant insists that the plaintiff has a duty to prove depletion of

the estate regardless of the fact it is not an element of the Code. The defendant extends its argument to the point that even if the plaintiff is able to prove depletion, he then must establish the value of the assets surrendered and further asserts that the value should be taken at the time of liquidation. The defendant is not alone in relying on the confusing cases and comments which have adopted, interpreted and twisted this judicial gloss.

As a starting point to illustrate the confusion which surrounds the use of the "depletion test," the court need look no further than 4 *Collier on Bankruptcy* (15th ed. 1985) which at § 547.20 p. 547–75 states:

> Proving depletion of the estate is not a necessary element to establish a preference under section 547.

However *Collier* then seems to espouse the opposite opinion at § 547.21 p. 547–85 which provides under the heading "Diminution of the Estate is Essential" that:

> Although transferee no longer need have reasonable cause to believe the debtor is insolvent, the Bankruptcy Code does not avoid every transfer of property made by the debtor within 90 days of bankruptcy, but only those preferential transfers that result in a depletion of the debtor's estate and that do not fall within one of the exceptions listed in section 547(c). That is implicit in the very nature of a preference as a transfer of assets available to creditors that results in favoring the transferee over other similar creditors who may share in the distribution. It may also be implied from the phrase 'for or on account of an antecedent debt,' carried over in section 547(b)(2) from the 1938 Act. (Footnotes omitted)

On the other hand within that same section *Collier* states that:

> The analysis concerning diminution of the estate is a convenient method for courts incapable of coping with the statutorily specified elements to reach just results. Counsel should refrain from arguing 'diminution of the estate' except as a last resort. The analysis in every case should be explained in terms of the requirements of the Code rather than by a judicially created short cut.

at Vol. 4, § 547.21 p. 547–91 n. 10 (15th ed. 1985)

Of course it is unfair to *Collier* to present these sections out of context but it does illustrate that on the surface this appears to be a legal muddle.

The case of *Deel Rent-A-Car, Inc. v. Levine,* 721 F.2d 750 (11th Cir.1983), which ruled that the diminution of the estate doctrine is not applicable when a debtor sues to avoid a preference under § 522(h), provides a well documented history of the doctrine. The court concluded that courts have generally applied the doctrine in cases where the creditor received an asset that, for some reason, is protected from the claims of other creditors. This application makes sense because it would be a meaningless effort to bring the funds back into the estate only to have the creditor assert an exemption that would allow him to retain them. The doctrine has also been used when a third party is involved. For example, where the debtor was a company and an officer paid a creditor with personal funds it was held that since there was no diminution of the estate there was no preference. *Brown v. First National Bank of Little Rock, Arkansas,* 748 F.2d 490 (8th Cir.1984). Also where there was an equal and contemporaneous benefit exchanged for the transfer, the doctrine was applied to determine if other creditors had been harmed. While the depletion of the estate doctrine may have evolved as an equitable power of the court, "as an equitable doctrine its application, of necessity, must comport to and remain compatable with the prevailing legislative intent." *Waldschmidt v. Ranier (In re Fulghum Construction Corporation )* 706 F.2d 171, 173 (6th Cir.1983). Thus while it may be useful to demonstrate that property transferred was not the debtor's it cannot be used as an extra test to be applied after the elements of a preference have been proven. This Court agrees with *Collier supra* at p.

547–91 that every case should be explained in terms of the requirements of the Code.

In this case Hartley by increasing the secured debts obtained a $500,000 loan to pay an antecedent debt to a creditor which amounts to a preference if the remaining elements are proven. However Peoples urges the court to create an element or a test not found in the Code to defeat the trustee's claim.

The bank contends that the court should consider that all of the property which the debtor granted security interest was already mortgaged far beyond its value. As proof of the worthlessness of those security interests the bank provided figures showing that none of the prior lienholders were satisfied when the property was liquidated after bankruptcy. While this court finds that such an analysis has no basis in the Code and that the suggested valuation method is erroneous it recognizes that this argument was gleaned from the case of *Virginia National Bank v. Woodson* (*In re Becker*), 329 F.2d 836 (4th Cir.1964).

In *Woodson* the debtor transferred shares in a community swimming pool in consideration for $8,000. All of the elements of a preference under the Act were met but the bank argued that the estate was not depleted by the transfer since the property had no value. The Court held that if the shares had value it was clearly a preference but there was no evidence in the record which established value and therefore the case was remanded to determine that question. It would be accurate to find that *Woodson* is limited to those particular circumstances where a sweet and honest sister as opposed to an agressive angry creditor takes security for a loan. It however is more convenient to distinguish this case as being under the Act. Whichever reason is acceptable, it is clear that requiring the trustee to prove the value of the transferred property is an erroneous procedure under the Code.

The most obvious reason *Woodson* is inapplicable is that when all the elements of a preference have been met the only way to preserve the transaction is through one of the exceptions specified in the Code, not by judicial gloss. A practical reason for denying this test would be to avoid a battle of the experts trying to determine the "true" value of the property. The defendants as in this case would argue that the value should be determined when liquidated, while the plaintiffs would assert the valuation should be at the time of the transfer. Either way all the parties would argue about the "true" value of property. However any such deviation from the Code is unnecessary.

Following the Code which avoids questioning the value of transferred property after the fact, this court finds the transferred property is worth at least what it was exchanged for. "A transfer of property includes anything of value which has debt paying or debt securing power". 4 *Collier on Bankruptcy* at § 547.08 p. 547–38 (15th ed. 1985). Here the debtor gave security interests to obtain a $500,000 loan which enabled it to pay a creditor. Those security interests were worth at least $500,000, therefore the transfer was taking value from the estate and transferring it for the benefit of an unsecured creditor on an antecedent debt.

## THAT ENABLES THE CREDITOR TO RECEIVE MORE THAN HE WOULD UNDER CHAPTER 7

The focus of the court must be on the effect of the payment, *Erman v. Armco* (*In re Formed Tubes, Inc.*), 41 B.R. 819 (Bankr.E.D.Mich.1984); *In re Villars*, 35 B.R. 868 (Bankr.S.D.Ohio 1983). A comparison must be made between what the bank would have been able to recover as a member of the class of unsecured creditors and what it received as a result of the transfer. The defendant has offered evidence that establishes the secured creditors will not receive anything near complete payment so it is apparent that unsecured creditors will receive nothing. The bank held an unsecured debt against the debtor and the payment to it allowed it to obtain a greater percentage of its debt than other creditors of the same class. Therefore the

payment cannot be validated. *Steel Structures, Inc. v. Star Manufacturing Company*, 466 F.2d 207 (6th Cir.1972).

The defendant maintains that possibly due to pending litigation the estate could be enlarged to permit a 100% distribution to creditors. To accept this argument "would make it impossible for a trustee to recover any transfer as a preference." *Belfance v. BancOhio National Bank (In re Gastaldo)*, 13 B.R. 808, 810 (Bankr.N.D.Ohio 1981). Moreover even if additional assets were recovered, the defendant would not be prejudiced, since it would be able to share pro-rata in the dividends received with other creditors of the same class. *In re Advance Glove Mfg. Co., supra; In re Gastaldo, supra; In re Brent Exporations*, 31 B.R. 745 (Bankr.D.Colo.1983).

### MADE WHILE THE DEBTOR WAS INSOLVENT

Section 547(f) of the Code provides the trustee with a statutory presumption that the debtor was insolvent on and during the 90 days immediately preceding the date of the filing of the bankruptcy petition. The defendant has not disputed the trustee's evidence that the debtors were insolvent.

Failure to rebut the presumption was enough for the court in *Rajala v. Bowlus School Supply (In re Kirk)*, 38 B.R. 257 (Bankr.D.Kan.1984) to find the debtor insolvent. Likewise in *Clay v. Traders Bank (In re Briarbrook Development Corporation)*, 11 B.R. 515, 519 (Bankr.W.D.Mo.1981) the court stated "Thus in the absence of any evidence on the issue of insolvency, the trustee must prevail."

Similarly in *Villars supra* the court was faced with a defendant who did not introduce any evidence of solvency. The court considered the evidence put forth by the trustee but in addition stated:

> The crucial fact in support of the Trustee's burden of proof, nevertheless, is the presumption of insolvency during the ninety days immediately prior to the filing of the bankruptcy petition. 11 U.S.C. § 547(f). This presumption must be ap-

plied pursuant to Rule 301 of the Federal Rules of Evidence. It does not shift the ultimate burden of proof on the question of insolvency, but it does require the Defendant to come forward with 'some evidence' to rebut the presumption. HR Rept. No. 95–595, 95th Cong. p. 375, Bkr-L Ed. Legislative History § 82:11. No competent evidence whatever was submitted by Defendant as to the valuation of the Debtors' assets or as to the amount of creditors' claims. Rule 301 shifts the burden of producing evidence, not the burden of persuasion. The Defendant in producing no competent evidence as to solvency does not even meet the minimum test of the 'bursting bubble' theory, which the legislative history negates.

At 873. Furthermore the Court in *In re Independent Clearing House Co.*, 41 B.R. 985 (Bankr.D.Utah 1984) held:

> The presumption of insolvency is governed by the standards of Rule 301 of the Federal Rules of Evidence, which places the ultimate burden of proof on the issue of insolvency on the trustee, but does not require him to present evidence on this issue unless the defendant creditor first comes forward with some evidence to rebut the presumption. H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 375 (1977), 1978 U.S.Code Cong. & Admin.News, p. 6331; S.Rep. No. 95–989, 95th Cong.2d Sess. 89 (1978), 1978 U.S. Code Cong. & Admin.News, p. 5875; *In re Thomas Farm Systems, Inc., supra*, 18 B.R. [543] at 544 [Bkrtcy.E.D.Pa. 1982)]; *In re Butler*, 3 B.R. 182, 185–86, 6 B.C.D. 32, 1 C.B.C.2d 533 (Bkrtcy.E.D. Tenn.1980)

at 1011.

In support of the motion for partial summary judgment plaintiff refers to Exhibit A of the complaint which contains Financial Statements of the debtor, showing total assets of $825,969.26 and total liabilities of $2,122,272.82 as of December 31, 1980. On June 2, 1981 the debtors' liabilities increased by at least $806,800, the amount of

the notes executed in favor of Midwest Emery and Peoples. The trustee's assertion meets the definition of insolvency provided by 11 U.S.C. § 101(26) which states:

'insolvency' means—

(A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property at a fair valuation ...

Since the defendant has not offered any evidence to rebut the presumption or the allegations made by the trustee the court must find the debtor insolvent at the time of the transfer.

## MADE WITHIN 90 DAYS OF BANKRUPTCY

The $500,000 transfer was received by the defendant on June 10, 1981. The debtor filed its voluntary bankruptcy for relief on September 8, 1981. The bank received the funds on June 10, 1981. Regardless of whether the day of the filing or transfer is excluded, both methods of computation result in the transfer being made on or within 90 days of insolvency. With all six elements of a preference having been proven by the trustee in this case the only way for the defendant to preserve the transaction is to qualify under one of the exceptions of § 547(c).

## § 547(c)(2) DEFENSE FOR PAYMENTS MADE IN THE ORDINARY COURSE OF BUSINESS

■ Peoples argues that if the court finds that the elements of a preference are present then the payment is protected under Section 547(c)(2) which provides that:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

In support of its position Peoples cites *Butz v. BancOhio National Bank*, 31 B.R. 893 (Bankr.S.D.Ohio 1983). In *Butz* the court found that payments made to cover overdrafts within 45 days after the debt was incurred were in the ordinary course of business and were thus excepted from the trustee's avoidance power. However Peoples seems to have overlooked the fact that the defendant in *Butz* had entered into a line of credit agreement where the bank agreed to honor overdrafts thereby making the payments to the bank routine according to the agreement. No such agreement exists in this case and there is no evidence to indicate the payments agreed upon at the June 2, 1981 meeting were in the ordinary course of business. The defendant's request for leave to demonstrate to the court how much of the debt was incurred within 45 days need not be considered because the defendant has failed to bear the burden of proving each of the four elements of the § 547(c)(2) exception. *In re Richter v. Phillips Jewelers & Distributors, Inc.*, 31 B.R. 512, 515 (Bankr.S.D.Ohio 1983).

■ In summary and for all of the reasons stated above the court finds that the $500,000 was obtained in exchange for the debtors' property and transferred to Peoples within 90 days of the debtors' bankruptcy petition, for the benefit of a creditor on an antecedent debt, while the debtor was insolvent, which qualifies as a preference to be avoided under § 547(b) and not excepted under any defense.

## SUMMARY JUDGMENT

When a party seeks summary judgment the court's actions are guided by the fact it is an extreme remedy that should be awarded cautiously. *St. Paul Mercury Insurance Co. v. Huitt*, 215 F.Supp. 709, 713 (W.D.Mich.1963), rev'd. on other grounds, 336 F.2d 37 (6th Cir.1964). Therefore, the court must carefully examine all of the

documents on file to ascertain if a genuine issue of material fact exists. If there is none, it must apply the law to the facts and render judgment.

Pleadings and documentary evidence must be liberally construed in favor of the party opposing the motion. *Board of Ed., Cincinnati v. Department of H.E.W.,* 532 F.2d 1070, 1071 (6th Cir.1976). Furthermore summary judgment must be denied unless the moving party demonstrates his entitlement to it beyond a reasonable doubt. 10A Wright & Miller, *Federal Practice and Procedure* § 2727 at p. 121 (1983). The burden on the party opposing summary judgment is not a heavy one; he simply is required to show specific facts as opposed to general allegations that present a genuine issue for trial. However "when the record is without contradiction or leads to but one conclusion, summary judgment is proper" *Board of Cty. Rd. Com'rs., etc., Mich. v. American Air, Inc.,* 369 F.Supp. 698, 702 (E.D.Mich.1974).

Peoples has not raised a genuine issue of material fact. The thrust of its attack on any factual matters goes to the question of whether James Hartley is the true debtor. Peoples base this proposition on a reading of plaintiff's amended complaint filed in case number 83 C 6267 which is pending in the United States District Court for the Northern District of Illinois, Eastern Division. The plaintiff urges that Peoples be estopped from disputing the fact that the Hartleys are the debtors because in several adversary complaints filed by the defendant it has alleged that the Hartleys are the debtors.

The amended complaint in question concerns an action filed against Milton D. Ratner and various companies under his control. While that complaint makes numerous allegations concerning Mr. Ratner, it does not allege that he is the true debtor. Paragraph 5 of the amended complaint identifies the Hartleys as the debtors while paragraphs 7–13 describe various defendants, none of whom is described as being the debtor. Peoples confusion must stem from the fact that the amended complaint alleges that the debtors were agents of certain principals and that those principals are liable for the debts of their agents.

The mere allegation that the Hartleys were agents does not vitiate their personal bankruptcy proceeding. In light of Peoples' misunderstanding of the plaintiff's allegation, this Court finds there is no genuine issue of material fact concerning the identity of the debtors in this case. The court further finds that James Ross and Sharon Lee Hartley are the debtors in this case and the court has jurisdiction over their case.

Another issue raised by the parties pertains to the testimony of Mr. Marvin Lourie who represented the interests of Midwest Emery in making the loan to the Hartleys. The plaintiff has submitted testimony of Mr. Lourie taken by deposition on June 2, 1981 to provide additional support for his assertion that the $500,000 was property of the debtor used to pay an antecedent debt to a creditor. There is no dispute that Midwest Emery wired $500,000 to be paid on the Hartley overdraft. However, the defendant took issue with the statement by Mr. Lourie in that deposition which provides:

Q. The agreement was for Midwest Emery to actually pay $500,000 to McComb Bank, isn't that correct?

A. To transmit some of Hartley's funds. There was no agreement for Midwest Emery to pay the McComb Bank out of its funds.

Lourie Deposition p. 86.

While People's counsel was present at Mr. Lourie's deposition, he did not clarify or oppose the above statement. Instead, defense counsel has submitted an affidavit of Mr. Lourie which was taken of course without the benefit of cross examination by the plaintiff. This affidavit continues to state that Midwest made a secured loan to Hartley to pay his overdraft at the McComb Bank. The only change is that instead of saying "some of Hartley's funds" were transferred, he was careful to state the $500,000 was not money earned

by Hartley nor did it represent money owed to Hartley by Midwest Emery.

The plaintiff filed a motion to strike the affidavit of Mr. Lourie citing *Bahamas Agricultural Industries Limited v. Riley Stoker Corporation*, 526 F.2d 1174, 1181 (6th Cir.1975) and *Cordle v. Allied Chemical Corporation*, 309 F.2d 821 (6th Cir. 1962) as supporting the inadmissibility of an affidavit which conflicts with a prior deposition at which opposing counsel had the opportunity to object to the material in question. On the other hand, in opposition to striking the affidavit, the defendant cites *Guarantee Insurance Agency Company v. Mid-Continental Realty Corporation*, 57 F.R.D. 555, 563 (1972) and 6 Moore, *Federal Practice*, 2nd Ed. 56:22[1] which provides:

> The deposition of a witness will usually be more reliable than his affidavit, since the deponent was either cross-examined by opposing counsel, or at least available to opposing counsel for cross-examination. Nevertheless if a witness has made an affidavit and his deposition has also been taken or he has made two affidavits, and the two in some way conflict, the court may not exclude the affidavit from consideration in the determination of the question whether there is any genuine issue as to any material fact.

at 56–1325–1326.

F.R.C.P. 56(c) expressly provides tht the court may make use of depositions on a summary judgment motion, *United States v. Leland Door Company*, 243 F.Supp. 918 (E.D.Mich.1965). In this matter the court follows the ruling in *Bender v. Southland Corporation*, 749 F.2d 1205, 1211 (6th Cir. 1984) where the Sixth Circuit Court of Appeals noted that the defendant cited *Reisner v. General Motors, Corp.*, 671 F.2d 91, 93 (2d Cir.) *cert. denied*, 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982) and *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir.1975) requesting it to ignore the rule that the plaintiffs may not attempt to raise genuine issues of material fact by filing affidavits that contradict their previous deposition testimony.

Without ruling on the correctness of that position the court allowed the affidavits on the grounds that they did not contradict the depositions. This Court believes that documents signed on June 2, 1981 speak for themselves and the testimony of Mr. Lourie while supportive is not dispositive. Considering Mr. Lourie's testimony in both the deposition and the affidavit it is clear that money was wired to the defendant on account of an antecedent debt after receiving security and that the transaction was a loan. Neither party disputes these facts. Therefore the court finds the affidavit does not contradict the deposition and it will be accepted. In light of the foregoing, the plaintiff's motion to strike the affidavit of Marvin Lourie should be denied. The court further finds that this testimony does not raise a genuine issue of material fact.

Considering the record in this case and applying the foregoing principles, the court determines there are no material factual issues in dispute. The only factual dispute raised by the defendant concerned the identity of the debtors and that claim did not raise a genuine issue since at all times the Hartleys have been listed as the debtors in this action. Therefore the court finds that summary judgment in favor of plaintiff is appropriate.

## CONCLUSION

This matter was transferred to the District Court upon the defendant's motion to withdraw reference. The District Court granted the motion and instructed this Court to submit a proposed order concerning the matters which are "clearly part of the traditional, non-peripheral work of the Bankruptcy Court."

Following the District Court's order this Court submits this proposed order granting plaintiff partial summary judgment on Count 4 of the complaint. However, in light of the District Court's order withdrawing reference and its recent memorandum and order in *Michigan Milk Producers Association v. Hunter*, 46 B.R. 214 (Bankr.D.C.Ohio 1985), this Court should decline to hear the remaining five counts of

plaintiff's complaint. Judge Walinski in *Michigan Milk Producers* stated: "[T]his record supports an affirmative determination that resolution of the instant adversary proceeding would require consideration of both Title 11 and non-bankruptcy federal statutes regulating organizations or activities affecting interstate commerce. Withdrawal of reference is, therefore, mandatory under 28 U.S.C. § 157(d)." This Court believes Counts 1, 2, and 3, alleging causes of action under bankruptcy law are so inextricably linked to Count 5, alleging a civil conspiracy to defraud creditors, and to Count 6, which requires substantial and material consideration of anti-racketering statutes, 18 U.S.C. §§ 1341, 1344, 1961(1) and (5) and 1962(a), (c) and (d) to resolve the issues, that withdrawal of reference is appropriate.

In accord with the mandate of the District Court the undersigned recommends the adoption of the foregoing proposed findings of fact, proposed conclusions of law, and the following proposed Order:

ORDERED that plaintiff be, and he hereby is, granted partial summary judgment on Count 4 of his complaint. It is further,

ORDERED that plaintiff have judgment against defendant in the amount of $500,-000.00. It is further,

ORDERED that the cross motion for summary judgment be, and it hereby is, denied. It is further,

ORDERED that the motion of the plaintiff to strike the affidavit of Marvin Lourie be, and it hereby is, overruled. It is further,

ORDERED that reference of this proceeding to the Bankruptcy Judge be, and it hereby is, withdrawn.